UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TAYLOR CARROLL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>VERSUS<br><br>SGS AUTOMOTIVE SERVICES, INC. | CIVIL ACTION NO. 3:16-CV-00537-SDD-RLB<br><br>JUDGE SHELLY D. DICK<br><br>MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |

### MEMORANDUM IN SUPPORT OF SGS NORTH AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, SGS North America, Inc. ("SGS"), submits this memorandum in support of its motion for summary judgment as to the claims asserted by Taylor Carroll ("Plaintiff").

## I. BACKGROUND FACTS[1]

**A.  Plaintiff, Cindy Carroll, and the Number**

Cindy Carroll married Plaintiff before any event relevant here.[2] The Carrolls' marriage is governed by a community property regime.[3] Plaintiff subscribed to the same cellular telephone number, 225-266-2606 (the "Number"), since 2009.[4] Cindy Carroll has Plaintiff's permission to use his telephone and is authorized to disclose the Number to others.[5]

**B.  Cindy Carroll's Credit Application and Lease with AHFC**

On or about June 22, 2013, Cindy Carroll and Plaintiff visited Acura of Baton Rouge in order to lease a car for Cindy Carroll's use.[6] Plaintiff requested that the dealer use his credit in

---

[1] SGS has submitted its Statement of Undisputed Material Facts in accordance with Local Rule 56(a), incorporated herein *in extenso*, but nevertheless provides citation to the record attachments for the convenience of the Court.
[2] Attachment "A," p.8:18-20 and Attachment "B," p.9:8-10 (The Carrolls married in 2012).
[3] Attachment "A," p.11:11-18; Attachment "B," p.9:13-15.
[4] Attachment "B," p.12:15-16.
[5] Attachment "A," p.15:19-21.
[6] *See* Attachment "A," 21:15-18.

the lease transaction so that Cindy Carroll could get a better price on the lease.[7]

In the course of providing information for the lease's credit application (the "Credit Application"),[8] Plaintiff voluntarily provided his Number to the dealer.[9] The Credit Application was directed to American Honda Finance Corporation, doing business as Acura Financial Services ("AHFC"), the vehicle's lessor.[10] Though the Credit Application identified Cindy Carroll as the applicant for credit, the document listed Plaintiff's telephone contact information.[11] Specifically, the Credit Application reflected that the Number was Cindy Carroll's "Home Phone" number.[12] Despite that inaccuracy, Cindy Carroll signed the Credit Application,[13] which included a certification that all of the information contained therein was "true, correct, and complete."[14]

After the Credit Application was completed, Plaintiff and Cindy Carroll decided that Cindy Carroll would lease a 2013 Acura TL (the "Vehicle").[15] The information provided by Plaintiff (including his cellular telephone number) in the Credit Application was used to determine the price paid under the lease.[16] The lease agreement (the "Lease") contained the following representation that all information contained on the Credit Application (including the information regarding the Number) was true and correct:

---

[7] *See* Attachment "A," p.33:1-5; Attachment "B," p.23:5-15.
[8] Attachment "A," Cindy Carroll Deposition Ex. #2, Credit Application.
[9] Attachment "A," pp.29:17-30:4; Attachment "B," p.20:9-16, p.64:21-24.
[10] Attachment "E," pp.1-2, and Honda Exhibit 1, Vehicle Lease (p.1) (AHFC acts as the "administrator of lease on behalf of Honda Lease Trust.").
[11] *See e.g.* Attachment "A," p.46:21-25 (discussing Cindy Carroll's Credit Application); Attachment "E," Honda Exhibit 2 (the Credit Application).
[12] *See id.*; SUMF "J."
[13] *See* Attachment "A," pp.44-47.
[14] Attachment "A," Cindy Carroll Deposition Ex. #2, Credit Application.
[15] Attachment "A," Cindy Carroll Deposition Ex. #8, Vehicle Lease.
[16] Attachment "E," p.1 ¶ 3 ("AHFC provides retail financing to Honda and Acura customers for purchase and lease of those vehicles."); Attachment "A," p.16.

2

> **LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in. If that payoff is more than the amount shown in the Itemization of Amount Due at Lease Signing on the front of this Lease, I will pay Lessor the excess amount upon demand.

Attachment "A," Cindy Carroll Deposition Ex. #8, Vehicle Lease. After three total hours at Acura of Baton Rouge,[17] Cindy Carroll signed the Lease and drove away in a new Acura TL financed in reliance on Plaintiff's credit information. The Lease expired on June 22, 2016,[18] and this litigation ensued soon therafter.

**C.    SGS's Contract with AHFC**

At all times relevant here, AHFC contracted with SGS to provide end-of-lease inspections of vehicles it leases to consumers.[19] AHFC monitors leases and, when a lease will soon expire, electronically forwards to SGS certain information provided by the customer in the credit application, including his or her "Home Phone" and work numbers as listed therein.[20] AHFC does not forward the "Cell Phone" number listed in AHFC credit applications.[21] This is the only method by which SGS obtains telephone numbers that it calls for the purpose of scheduling end-of-lease inspections.[22] AHFC also provides documents to lessees to advise them that SGS will perform end-of-lease inspections. One letter AHFC sent to Cindy Carroll regarding an SGS inspection is in this record. Attachment "E," Honda Exhibit 4, dated May 9, 2016.

In turn, SGS contacts AHFC's lessees *via* telephone from its call center to schedule an inspection prior to the lessee's return of the vehicle to the dealership at the conclusion of the

---

[17] Attachment "A," p.28:5-11.
[18] Attachment "A," Cindy Carroll Deposition Ex. #8, Vehicle Lease.
[19] Attachment "D.1," p.2 ¶¶ 4-5; Attachment "D.2," p.76:14-16; Attachment "E," p.2 ¶ 7.
[20] Attachment "D.1," p.3 ¶ 8; Attachment "D.2," p.53:9-15; Attachment "E," p.3 ¶ 12.
[21] Attachment "D.1," p.3 ¶ 8; Attachment "D.2," p.53:9-15; p.56:14-18; Attachment "E," p.2-3 ¶ 10.
[22] Attachment "D.1," p.3 ¶ 8; Attachment "D.2," p.48:22-25; Attachment "E," p.2-3 ¶ 10.

3

lease.[23] SGS makes no money from making these telephone calls.[24] Under its contract with AHFC it is paid only for vehicle inspections, and SGS absorbs all the costs of obtaining that inspection (including costs associated with the operation of a call center).[25] The inspections are conducted by SGS either at a convenient location selected by the lessee or at a dealership.[26] The inspections may either be performed prior to or after a lessee returns the car to the dealership at the conclusion of their lease.[27]

Consistent with their normal course of dealing, AHFC provided SGS with the Number, *i.e.* Cindy Carroll's putative "Home Number" as stated in her Credit Application.[28] This is a stipulated fact.[29]

**D.   SGS's Calls to the Number**

Cindy Carroll's lease was scheduled to terminate in June of 2016. SGS called the Number on nine occasions in May of 2016 to schedule a lease-end inspection of the Vehicle.[30] These calls were not made as part of any effort to sell Cindy Carroll or Plaintiff any goods or services; rather, as the messages left by SGS clearly communicate, they were made on behalf of Cindy Carroll's lessor (AHFC) in an effort to schedule an inspection (paid for by AHFC) of a vehicle Cindy Carroll had already leased.[31]

---

[23] Attachment "D.1," p.2 ¶ 5.
[24] Attachment "D.1," p.3 ¶ 11; Attachment "D.2," pp.74-77; Attachment "E," p.2 ¶ 9.
[25] Attachment "D.1," p.2 ¶ 5.
[26] Attachment "D.1," p.2 ¶ 4.
[27] Attachment "D.1," p.2 ¶ 4.
[28] Attachment "E," pp.2-3 ¶ 10 (discussing the transmission of the number Cindy Carroll identified as her "Home Number," as listed in Honda Affidavit Exhibit 2, to SGS).
[29] Attachment "D.2," p.124:1-10, 16-20 ("**Mr. Wolff**: As far as we know as the parties given the production made by American Honda Finance Company and your production and Acura's production, the only document that lists this number 225-266-2606, is the credit application which has been identified for this record as SGS 4. Can we stipulate to that? . . . **Mr. Blunt:** Why don't we just stipulate that this was a number given to SGS by American Honda Finance? **Mr. Wolff:** All right.").
[30] Attachment "D.1," p.3 ¶ 10.
[31] Attachment "D.1," p.2 ¶¶ 4-5; Attachment "D.2," p.76:14-16; Attachment "E," p.2-3 ¶¶ 9-10.

4

Cindy Carroll returned the Vehicle to the dealership prior to the lease-end date.[32] Because SGS was unable to reach Cindy Carroll,[33] it was unable to schedule a lease-end inspection prior to the return of the Vehicle to the dealership.[34] SGS was notified of the Vehicle's return to the dealership and halted all calls to the Number.[35] An SGS employee inspected the vehicle at the dealership, and AHFC paid SGS $45 after the final inspection report was filed with AHFC, *i.e.* the only payment received from AHFC in relation to the Vehicle.[36]

### E. Plaintiff's Damages

When asked what actual harm he has suffered as a result of the phone calls he received from SGS, Plaintiff responded that (1) he had to take a few minutes out of his day to listen to the voice mails left by SGS; (2) his cellular plan is not unlimited and thus the calls from SGS counted against his monthly total allowance; and (3) an unspecified "invasion of privacy."[37] Plaintiff admits that SGS's calls did not cause his law firm (which pays his cell phone bill) to pay any more for Plaintiff's cellular service than it would have paid if the calls were never made.[38]

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[32] Attachment "A," pp.42-44.
[33] Instead of answering any one of the calls or advising his wife to schedule a vehicle inspection, Plaintiff (an attorney that has represented defendants in TCPA litigation) instead decided to transcribe the messages that he received and take screenshots of his cellular telephone's call log, presumably for the purpose of including those messages in his petition. Attachment "B," p.37:10-23, p.38:4-19. This is Plaintiff's second TCPA venture. Attachment "B," p.15-17; Attachment "C," Response to Interrogatory No. 7.
[34] Attachment "B," p.40:19-25; Attachment "D.1," p.3 ¶ 10.
[35] Attachment "D.1," p.3 ¶ 11.
[36] Attachment "D.1," SGS Exhibit 3, Carroll Inspection Billing Invoice.
[37] Attachment "B," pp.39-40, 54-60; Attachment "C," Response to Interrogatory No. 13.
[38] Plaintiff is the subscriber of service for the Number, but the bills for that service are paid by the law firm at which Plaintiff is a partner. Attachment "B," p.12.

movant is entitled to judgment as a matter of law."[39] "Where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material [fact] can exist."[40] A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party."[41]

"Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[42] "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[43]

**B.     Plaintiff Cannot Prove that SGS Made Any Calls Without Express Consent, and Thus Cannot Prove His Claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227,** *et seq***. (the "TCPA")**

As relevant to this motion, the TCPA states that it is "unlawful for any person within the United States . . . to make any call (other than a call . . . made with the <u>prior express consent</u> of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied).

**1.     The Interpretation of "Prior Express Consent" Under the TCPA**

The language of the TCPA cannot, by law, be read in a vacuum. "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the

---

[39] *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (citing Fed. R. Civ. Proc. 56(a)).
[40] *Id.* (quotations omitted) (citing *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007)).
[41] *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016) (quotations omitted).
[42] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotations omitted).
[43] *Id.* (quotations omitted).

provisions of the TCPA."[44] Pursuant to 28 U.S.C. § 2342, the "Hobbs Act," "Congress unambiguously deprived the federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeals."[45] When (as here) a suit is not predicated on the Hobbs Act, the FCC's TCPA rules and regulations are "entitled to precedential effect."[46] "[T]he FCC has interpretive authority over the TCPA, and its rulings shape the law in this area."[47] Thus, the "FCC's view of the statute" is controlling in this case.[48]

Under the FCC's interpretation of the TCPA, "any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶ 31 (1992).[49] The FCC explained that when a person

---

[44] *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014). *See also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("Pursuant to its rulemaking authority, the 'FCC defined "prior express consent' in its initial rulemaking following the TCPA's passage.").

[45] *Mais*, 768 F.3d at 1113. *See also* 47 U.S.C. § 402(a) (providing that any "proceeding to enjoin, set aside, annul, or suspend any order of the [FCC]" must be brought under the Hobbs Act); *Adamcik v. Credit Control Services, Inc.*, 832 F.Supp. 744, 748 n.13 (W.D. Tex. 2011) ("However, under the Hobbs Act, this Court has no jurisdiction to review the FCC's rule, and so the Court duly applied the rule in the jury instruction and verdict form here.") (citation omitted); *See also Greene v. DirecTv, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) ("A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders.") (citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449-50 (7th Cir. 2010)).

[46] *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, *10 n.10 (W.D.N.Y. Sept. 15, 2011).

[47] *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (formatting, quotations, and citations omitted).

[48] *Aderhold v. Car2go N.A. LLC*, — Fed. App'x —, 2016 WL 4709873, *1 (9th Cir. 2016) ("The district court lacked jurisdiction under the Hobbs Act, 28 U.S.C. § 2342, to depart from the FCC's view of the statute.").

[49] Neither the TCPA nor the FCC's implementation of same "require any specific method by which a caller must obtain such prior express consent for non-telemarketing calls to wireless phones." *Matter of Groupme, Inc./skype Commc'ns SARL Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, ¶ 7 (2014).

In 2012, the FCC imposed written consent requirements for "telemarketing" calls. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012). "It maintained, however, the existing consent rules for *non-telemarketing calls*." *Payton v. Kale Realty, LLC*, 2016 WL 703869, *9 (N.D. Ill. Feb. 22, 2016) (emphasis original). "The term telemarketer means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 C.F.R. § 64.1200(11). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 C.F.R. § 64.1200(12). Within the context of a TCPA claim, messages sent "to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter" are not "telemarketing messages." *Aderhold*, — Fed. App'x —, 2016 WL 4709873, *1.

gives a number to another, the subsequently "called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." *Id.* at ¶ 31, n.57.[50] Put simply, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary[,]" *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305-06 (11th Cir. 2015) (emphasis supplied),[51] and a person consents to a call under the TCPA "simply by providing his phone number" to another. *Aderhold v. Car2go N.A. LLC*, — Fed. App'x —, 2016 WL 4709873, *1 (9th Cir. 2016) (emphasis supplied).[52]

2. **Consent to Calls Extends to All "Normal Business Communications" that Bear "Some Relation" to the Transaction for which a Telephone Number was Provided**

The "TCPA does not require that a call be made for the exact purpose for which the number was provided," but instead only "requires that the call bear some relation to the product or service for which the number was provided." *Taylor v. Universal Auto Grp. I, Inc.*, 2014 WL 12526280, *2 (W.D. Wash. Oct. 3, 2014) (quotation omitted).[53] Indeed, in 2015, the FCC reiterated that Congress did not intend for the TCPA to "prohibit normal business communications . . . ." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, ¶ 76 (2015). Normal business communications include communications that are "expected or desired between businesses and their customers" including "messages that advise a customer (at the telephone number provided by the customer) that . . . a

---

[50] *DCI Biologicals*, 797 F.3d at 1305-06 (11th Cir. 2015) (accord).

[51] *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 (3rd Cir. 2013) ("[T]he FCC has stated that autodialed calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted permission to be called at the number which they have given, absent instructions to the contrary."); *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (accord).

[52] ("[Plaintiff] therefore consented to receiving text messages related to the application process from [defendant] simply by providing his phone number in the application for membership."). Text messages and calls are treated identically under the TCPA. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (The TCPA "encompasses both voice calls and text calls to wireless numbers . . . ."); *Strickler v. Bijora, Inc.*, 2012 WL 5386089, *4 (N.D. Ill. Oct. 30, 2012) (accord).

[53] *Hudson v. Sharp Healthcare*, 2014 WL 2892290, *6 (S.D. Cal. June 25, 2014) (same).

8

service was scheduled or performed . . . ." *Id.*; *also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 15391, ¶ 8 (2012) (accord).

3.    **Consent to Calls Under the TCPA Extends to the Contractors of Parties to Whom a Telephone Number is Given**

"[A] consumer's prior express consent may be obtained through and conveyed by an intermediary[.]" *Matter of Groupme, Inc./skype Commc'ns SARL Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, ¶ 6 (2014). As a result, "a third-party contractor performing services for the entity to which a plaintiff provided her cell phone number stands in the shoes of that entity in a consent analysis." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 735 (N.D. Ill. 2014).

Courts have strenuously rejected arguments to the contrary. *Frausto v. IC Sys., Inc.*, 2011 WL 3704249, *2 (N.D. Ill. Aug. 22, 2011) (describing that contention as "plainly off the mark"); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014), *aff'd*, 636 F. App'x 715 (9th Cir. 2016) ("No reasonable consumer could believe that consenting to be contacted by an airline company about a scheduled flight requires that all communications be made by direct employees of the airline, but never by any contractors performing services for the airline.").[54]

4.    **Application of Law to the Undisputed Facts**

In this case, it is undisputed that Plaintiff voluntarily provided the Number for purposes of financing the lease of the Vehicle, and that Cindy Carroll later adopted the Number as her "home" number by executing the Credit Application and the Lease. Thus, both Plaintiff and Cindy Carroll knowingly released the Number to AHFC as part of the lease transaction. In doing

---

[54] *Also Greene v. DirecTv, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (Cell phone subscriber's "release" of cellular telephone number to Equifax "knowing that potential creditors would use it as the contact number for fraud alert notifications" and "conditions on the use of her number for fraud alert purposes" constituted consent to third-party calls.).

9

so, both Plaintiff and Cindy Carroll[55] granted prior express consent to AHFC, to call them at the Number for any purpose related to the lease of the Vehicle.[56]

There is no dispute that SGS called the Number. The summary judgment evidence shows that SGS was acting at all pertinent times as the contractor of AHFC for purposes of servicing the lease of the Vehicle. The contract between AHFC and SGS made SGS AHFC's "intermediary" (as that term is used in the pertinent FCC rulings) for purposes of lease-end inspections, and thus the prior express consent granted to AHFC for telephone calls regarding matters related to the lease extended to SGS as well.[57]

Application of the controlling principles to similar facts can be seen in the case of *Mais v. Gulf Coast Collection Bureau, Inc.*[58] In *Mais*, the plaintiff's wife, in filling out a hospital admissions form, provided the cellular phone number of plaintiff. The hospital bill was not paid, and subsequently a bill collector retained by a hospital radiologist attempted repeatedly to

---

[55] The record shows that Cindy Carroll was Plaintiff's spouse in a marriage subject to a community property regime, and otherwise, had Plaintiff's permission to use his telephone; thus, Cindy Carroll had authority to consent to telephone calls being made to the Number. *Gutierrez v. Barclays Group*, 2011 WL 579238, *3 (S.D. Cal. Feb. 9, 2011) (husband's act of providing wife's cellular phone number on on-line credit card application sufficient to provide prior express consent for credit card company to call wife's cellular phone); *see* La. Civ. Code arts. 2340 and 2346; *Tedeton v. Tedeton*, 46,901 (La. App. 2 Cir. 2/8/12), 87 So. 3d 914, 922.

[56] *Aderhold*, 2016 WL 4709873, *1 ("Aderhold therefore consented to receiving text messages related to the application process from car2go simply by providing his phone number in the application for membership."); *Baird v. Sabre, Inc.*, 636 Fed. Appx. 715, 716 (9th Cir, 2016) ("Baird expressly consented to the text message in question when she provided Hawaiian Airlines with her cellphone number. Baird knowingly released her phone number to Hawaiian Airlines while making a flight reservation. She did not provide any instructions to the contrary indicating that she did not wish to be reached at that number. Therefore, according to the 1992 Order, Baird provided prior express consent to receive the text message in question.") (internal quotation marks, citation, and brackets omitted); *Murphy*, 797 F.3d at 1307 ("Mr. Murphy gave his express consent to be contacted by DCI when he included his cell phone number on the New Donor Information Sheet before giving blood."); *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F.Supp. 811, 815 (S.D. Tex. 2014) ("In connection with the Contract, Plaintiff completed a Credit Application and provided his cell phone number as the contact number on the Credit Application. Plaintiff's provision of his cell phone number on the Credit Application constitutes his prior express consent to be contacted on that cell phone using an automated telephone dialing system.") (citations omitted).

[57] *Baird v. Sabre, Inc.*, 636 Fed. Appx. at 716 n.3 (where plaintiff had provided telephone number to airline in conjunction with plane reservation, airline's service vendor had express prior consent to call plaintiff regarding her airplane reservation); *Chisholm v. AFNI, Inc.*, 2016 WL 6901358, *5 (D. N.J. Nov. 22, 2016) (granting summary judgment where "it is undisputed that Plaintiff had a written contract with DirecTV for cable television service, that he provided his address and phone number to DirecTV, and that Defendant called Plaintiff to collect on that debt after DirecTV referred the account to AFNI.") (citations omitted).

[58] 768 F.3d 1110 (11 Cir. 2014).

10

contact the plaintiff at his cellular number. The plaintiff filed a class action suit under the TCPA and filed a motion for summary judgment, while the defendant debt collector filed its own cross-motion for summary judgment asserting the express prior consent defense. The district court granted the plaintiff summary judgment, but the Eleventh Circuit reversed, finding instead that summary judgment should be entered on behalf of the defendant debt collector. In so holding, the Eleventh Circuit cited the FCC's rulings concerning the use of "intermediaries," and concluded that plaintiff (through his wife) had provided prior express consent for the hospital (and its intermediary, the debt collector) to contact plaintiff on his cellular phone.[59]

The same result should be reached in this case. Both Plaintiff and Cindy Carroll provided express consent to AHFC and its agent SGS to call the Number provided in the Credit Application and associated with the Lease. On these facts, Plaintiff's TCPA claim should be dismissed because he gave his prior express consent to SGS's calls. 47 U.S.C. § 227(b)(1)(A)(iii).

C. **All of Plaintiff's State Law Claims Lack Merit**

Plaintiff bears the burden of proof at trial on his state law tort and nuisance claims.[60] Accordingly, to defeat these claims SGS "is not required to present evidence proving the absence of a material fact issue; rather, [SGS] may meet its burden by simply pointing to an absence of evidence to support [Plaintiff's] case."[61]

1. **Invasion of Privacy**

The Court recently addressed Louisiana invasion of privacy claims. "Louisiana courts have allowed tort actions for invasion of privacy which involves the basic right of a person to be

---

[59] *Mais*, 768 F.3d at 1123-26.
[60] *BASF Corporation v. Man Diesel & Turbo North America, Inc.*, 2016 WL 5817159, *47 (M.D. La. Sept. 30, 2016).
[61] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (internal quotation marks and citations omitted).

11

let alone in his private affairs."[62] As relevant here, invasion of privacy requires proof of "an unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion[.]"[63] "Where the defendant's action is properly authorized or justified by circumstances, it is deemed reasonable and non-actionable, even though it admits to a slight invasion of the plaintiff's privacy."[64] Moreover, "[t]o be actionable, a defendant's conduct must be unreasonable and must seriously interfere with the plaintiff's privacy interest."[65]

Plaintiff's invasion of privacy claim fails for three reasons. *First*, Plaintiff voluntarily released the Number to AHFC in connection with Cindy Carroll's lease, such that he "properly authorized" SGS's calls related to that transaction. *Second*, SGS's calls were "justified under the circumstances," *i.e.* SGS made a call to a telephone number that Cindy Carroll, with Plaintiff's permission, provided to AHFC. SGS and AHFC may justifiably rely on representations made by prospective lessees in their credit applications, and Plaintiff cannot show that SGS acted without justification under the circumstances Plaintiff created by releasing his number in relation to his wife's lease. *Third*, ignoring the fact that Plaintiff provided the Number to AHFC—and but for that decision would never have been called in the first instance—the calls do not constitute the unreasonable, serious privacy interference contemplated under Louisiana law.[66] For all of these reasons, Plaintiff's invasion of privacy claim should be dismissed.

---

[62] *Walker-Jones v. Louisiana Ass'n of Educators*, 2016 WL 1169473, *2 (M.D. La. Mar. 22, 2016).
[63] *Id.*
[64] *Id.* (emphasis supplied).
[65] *Id.*
[66] *See Walker-Jones*, *supra*.

## 2. Nuisance[67]

Plaintiff's nuisance claims are wholly misplaced. "[T]he source of nuisance actions in Louisiana" are found in Louisiana Civil Code articles 667-669.[68] Article 667 "authorizes an action by a 'neighbor' against the owner of an immovable ('proprietor') for damage that the neighbor suffered by virtue of an activity conducted on the proprietor's premises."[69] "To show that he is a 'neighbor,' and thus legally entitled (standing; right of action) to maintain an art. 667 action, a plaintiff must show some type of ownership interest in immovable property near that of the proprietor."[70]

Plaintiff's nuisance claims fail for other reasons. A nuisance plaintiff must allege and prove "real damage"—complaints of "mere inconvenience" are insufficient.[71] Further, Louisiana law does not permit the recovery of purely economic damages in the absence of some physical damage to the plaintiff's person or property.[72] In this case, Plaintiff offers no allegations, and can present no proof on this record, of any physical damage to his person or property, and the

---

[67] Plaintiff asserts separate claims of "public" and "private" nuisance. Plaintiff ignores the distinction between public and private nuisances, and in particular the requirement of a present and continuing injury to a public right before an action to abate a public nuisance can be maintained. *See Sadler v. International Paper Co.*, 2014 WL 1030088, *2 (W.D. La. March 14, 2014) (citing *State ex rel. Dema Realty Co. v. McDonald*, 121 So. 613, 616 (La. 1929); *Carbajal v. Vivien Ice Co.*, 104 So. 715, 716 (La. 1925)). In any case, whether stated in terms of public or private nuisance, Plaintiff's nuisance claims fail.

[68] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003 n.13; *Levet v. Exxon Mobil Corp.*, 2015 WL 9685555, *8 (W.D. La. Nov. 19, 2015), *report and recommendation adopted*, 2016 WL 112678 (W.D. La. Jan. 8, 2016) ("The obligations of neighborhood set forth in [La. Civ. Code] arts. 667–669 are the source of nuisance actions in Louisiana.").

[69] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386-87 (5th Cir. 2001).

[70] *Id.* at 387. *See also Bd. of Comm'rs of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 644 (E.D. La. 2015) ("Plaintiff's public and private nuisance claims must be dismissed" where plaintiff failed to prove proximate immovable estates); *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 690 (E.D. La. 2006) (Article 667 *et seq.* "applies only in the case of damage done to neighbors.").

[71] *Bartlett v. Browning-Ferris Industries, Chemical Services, Inc.*, 96-218 (La. App. 3 Cir. 11/6/96), 683 So. 2d 1319, 1324-25, *writ denied*, 97-0317 (La. 3/27/97), 692 So. 2d 394.

[72] *Wiltz v. Bayer Cropscience L.P.*, 645 F.3d 690 (5th Cir. 2011); *TS & C Investments, LLC v. Beusa Energy, Inc.*, 637 F.Supp.2d 370, 374-81 (W.D. La. 2009).

jurisprudence makes clear that passing "inconveniences" associated with SGS's telephone messages do not rise to the level of actionable "real damage."[73] Plaintiff's nuisance claims fail.

**3.      Conversion**

When the owner of a thing "takes some action that shows consent to or ratification of the taking of his property, he is estopped from bringing an action for conversion." *Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 499 (E.D. La. 2007); *Blair v. Source One Mortg. Servs. Corp.*,1997 WL 250040, *11 (E.D. La. May 9, 1997) (accord). "If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion of the property." *Richardson v. Cella*, 1 F. Supp. 3d 484, 500 (E.D. La. 2014) (citing *Aymond v. State, Dept. of Revenue and Taxation*, 95-1663 (La. App. 1 Cir. 4/4/96), 672 So. 2d 273, 276).

Plaintiff's conversion claim fails for the same reason that his TCPA claim fails: He expressly consented to calls to the Number. In the FCC's judgment—*i.e.* the judgment of the preeminent regulatory agency in the field of telecommunications—the release of a telephone number is considered express consent to subsequent telephone calls. Yet Louisiana conversion claims fail upon mere <u>implied</u> consent. *Richardson*, 1 F. Supp. 3d at 500. Thus, whether evaluated in terms of express or implied consent, Plaintiff's voluntary release of the Number to

---

[73] *Stagni v. State ex rel. DOTD*, 01-374 (La. App. 5 Cir. 5/13/02), 812 So. 2d 867, 871, *writ denied*, 2002-1469 (La. 9/20/02), 825 So. 2d 1173 ("The building of Troop B did not seize any of plaintiff's land, it did not damage any of his property, and it did not restrict any ingress or egress. Likewise, it created no nuisance."); *Barrett v. T.L. James & Co.*, 28,170 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1186, 1193, *writ denied*, 96-1124 (La. 6/7/96), 674 So. 2d 973 (dust and noise created by concrete recycling operation near mobile home of plaintiff "constituted only an inconvenience and not a nuisance to the plaintiffs."); *Adrouny v. International City Bank & Trust Co.*, 266 So. 2d 524, 525 (La. App. 4 Cir. 1972), *writ denied*, 263 So. 2d 365 (La. 1972) ("Finally we note that plaintiffs' petition also claimed that the earlier (and now abandoned) use of Lot One with TV tellers created a nuisance of added lights, traffic noise, fumes and congestion, which plaintiffs apprehended would be worse with the TV tellers on Lot A. These allegations are in our judgment insufficient to state a cause of action to enjoin the employment of the TV tellers as a nuisance.").

AHFC in connection with the lease of the Vehicle constituted consent to subsequent calls regarding same. Plaintiff's claims therefore fail. *See id.*; *Gaunt*, 512 F. Supp. 2d at 499.

Though the question is made academic in light of the estoppel described above, Plaintiff's conversion claim fails on *prima facie* grounds. "To constitute a conversion, an intentional dispossession and/or exercise of dominion or control over the property of another in denial of or inconsistent with the owner's rights must be established." *Melerine v. O'Connor*, 2013-1073 (La. App. 4 Cir. 2/26/14), 135 So. 3d 1198, 1203. Plaintiff asserts that SGS's calls "deprived [him] of the use of [his] cellular telephone[], which could no longer be used for any other purpose while receiving [SGS's] calls."[74] This claim is absurd. Under Plaintiff's expansive conception of the law, he is "dispossessed" or loses "dominion over" a telephone solely on grounds that he would need to deny an incoming call or allow the call to go to voicemail.

Plaintiff has thus asked the Court to announce that under Louisiana Civil Code article 2315, the Louisiana Legislature intends to impose liability in tort on any person that calls a number on any cellphone without the called party's prior subjective consent. This tort extends to negligently directed calls, specifically including instances when a caller negligently relies on a signed document warranting that the called number belonged to the claimant's spouse.[75] SGS respectfully represents that Civil Code article 2315 cannot be read so broadly.

### III.  CONCLUSION

For the reasons stated above, Defendant respectfully requests that all of Plaintiff's claims against it be dismissed, with prejudice, and at Plaintiff's cost.

*\*\*\**

---

[74] Plaintiff's Petition, ¶ 52.
[75] Exhibit D.2, Deposition of SGS, Ex. "SGS 4" (Credit Application).

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   /s/ *Shelton Dennis Blunt*
Shelton Dennis Blunt, Bar Roll No. 21230
Jack B. Stanley, Bar Roll No. 34106
Kevin W. Welsh, Bar Roll No. 35380
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Telecopier: 225-381-9197
Email:  dennis.blunt@phelps.com
        jack.stanley@phelps.com
        kevin.welsh@phelps.com

ATTORNEYS FOR DEFENDANT SGS NORTH AMERICA, INC.

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum in Support of Motion for Summary Judgment was filed on this 13th day of January, 2017 with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/ *Shelton Dennis Blunt*
Shelton Dennis Blunt