**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

TAYLOR CARROLL                                                         CIVIL ACTION

VERSUS                                                                         16-537-SDD-RLB

SGS NORTH AMERICA, INC.

### RULING

This matter is before the Court on the *Motion for Summary Judgement*[1] filed by Defendant, SGS North America, Inc. ("Defendant"). Plaintiff, Taylor Carroll, ("Carroll") has filed an *Opposition*[2] to this motion, to which the Defendant has filed a *Reply*.[3] Carroll also provided the Court with a *Notice of Supplemental Authority* in support of its' *Opposition*.[4] For the following reasons, the motion will be GRANTED IN PART AND DENIED IN PART.

### I.  FACTUAL BACKGROUND[5]

Carroll and his wife leased a 2013 Acura TL ("vehicle") from Acura of Baton Rouge on June 22, 2013. In order for his wife to receive a better lease price, Carroll asked Acura of Baton Rouge[6] to use his cellphone number on the credit application.[7] Carroll's cellphone number was also listed as the home phone number on the credit application.[8]

---

[1] Rec. Doc. 26.
[2] Rec. Doc. 30.
[3] Rec. Doc. 32.
[4] Rec. Doc. 39.
[5] The Court draws the factual background from the following documents: Rec. Docs. 25, 26-1, 30, and 32.
[6] Acura of Baton Rouge directed the credit application to Acura Financing Services ("AHFC").
[7] Rec. Doc. 30-3, p. 9, l. 16-21.
[8] Rec. Doc. 30-1.
40601

Carroll argues that the salesman at Acura of Baton Rouge "knew [the home phone number] was my cell phone number."[9] Acura of Baton Rouge then "directed the credit application to American Honda Finance Corporation, doing business as Acura Financial Services ("AHFC")."[10] According to the Defendant, "despite the inaccuracy [listing the cellphone number in the box title[d] home phone], [Carroll's wife] signed the Credit Application, which included a certification that all of the information contained therein was 'true, correct, and complete.'"[11]

Carrol's wife leased the automobile on June 23, 2013. AHFC "monitors leases and, when a lease will soon expire, electronically forwards to SGS certain information provided by the customer in the credit application, including his or her 'Home Phone' and work numbers as listed therein."[12] Pursuant to their contract with AHFC, SGS provides end of lease inspections on vehicles leased through AHFC.[13] Carrol alleges "from May 9, 2016 to May 20, 2016, [he] received nine prerecorded calls on his cell phone from Defendant, using equipment having predictive dialing capability, sent in an attempt to schedule a vehicle inspection."[14] Carroll filed this action alleging the Defendant violated 47 U.S.C. §227, the Telephone Consumer Protection Act ("TCPA"), "by placing non-emergency telephone calls using an automatic telephone dialing system ("ATDS") and an artificial or prerecorded voice to cellular phone subscribers without their prior express

---

[9] Rec. Doc. 30-3, p. 9, l. 6-12. When asked how Carroll knew that the Acura of Baton Rouge employee knew that the home phone number was actually his cell phone number Carroll stated, "Because he typed it in the cellphone box." *Id.* at. l.10-12.
[10] Rec. Doc. 26-1, p. 2.
[11] *Id.*
[12] *Id.* at p. 3.
[13] *Id.* at p. 3.
[14] Rec. Doc. 30, pp. 3-4.
40601

consent, in violation of 47 U.S.C. §227(b)(1)(A)."[15]  Carroll's petition also contains Louisiana state law claims for invasion of privacy, nuisance, and conversion.[16]  Carroll filed individually and on behalf of the class - the class has not been certified at the time of this ruling.  The Defendant now moves for summary judgment on Carroll's TCPA claim and Louisiana state law claims.  Carroll has opposed this motion.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[18]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[19]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[20]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a

---

[15] Rec. Doc. 25, p. 1, ¶ 1.
[16] *Id.* at pp. 13-17, ¶¶ 48-64.
[17] Fed. R. Civ. P. 56(a).
[18] *Delta & Pine Land v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[19] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552 (1986))).
[20] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

scintilla of evidence."[21]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[22] All reasonable factual inferences are drawn in favor of the nonmoving party.[23] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[24] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; the plaintiff [can]not rest on his allegations … to get to a jury without any 'significant probative evidence tending to support the complaint.'"[25]

### B. Carroll's TCPA Claim[26]

To survive the Defendant's motion Carroll must provide summary judgment evidence on the following three elements of his TCPA claim: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; and (3) without the recipient's prior express consent."[27] To the first element, the Defendant does not dispute that it called Carroll's phone number, rather the Defendant argues that it contacted Carroll's cellphone because it was the same number that was provided as the

---

[21] *Willis v. Roche Biomedical Labs.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[22] *Pylant v. Hartford Life & Accident*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[23] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[24] *RSR v. Int'l. Ins.*, 612 F.3d 851, 857 (5th Cir. 2010).
[25] *Nat'l Ass'n of Gov't Employs v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[26] The Court's research did not yield any relevant jurisprudence from the Fifth Circuit Court of Appeals. Accordingly, the Court will consult jurisprudence from other Courts of Appeal.
[27] *Meyer v. Portfolio Recovery Assoc.,* 707 F.3d 1036, 1043 (9th Cir. 2012).

"putative 'Home Number' as stated in the credit application."[28] The call log provided by Defendant lists nine separate times Defendant left a message or called Carroll's cellphone number.[29] Accordingly, the Court finds that Carroll has presented summary judgment evidence regarding the first element of his TCPA.

The Court considers the Ninth Circuit case *Meyer v. Portfolio Recovery Associates, LLC*[30] in evaluating the second element of Carroll's TCPA claim. The *Meyer* court held, "[t]he clear language of the TCPA mandates that the focus [regarding whether the call was made using automatic telephone dialing system] must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator."[31] Anthony Perkins ("Perkins"), a designated representative of the Defendant, stated that the predictive dialer, the equipment used to call Carroll's cellphone, generated all nine prerecorded calls during May of 2016.[32] Perkins testified the Defendant[33] receives either home or work numbers from AHFC and inputs and stores the numbers in the predictive caller system.[34] Accordingly, the Court finds that Carroll has presented summary judgment evidence that the Defendant used a telephone dialing system that had the capacity to store his telephone number.

---

[28] Rec. Doc. 26-1, p. 4.
[29] Rec. Doc. 26-6, p. 17.
[30] 707 F.3d at 1043 (9th Cir. 2012).
[31] *Id.*
[32] Rec. Doc. 30-5, pp. 8-10.
[33] The Court finds that contractors, such as the Defendant, may contact individuals using phone numbers which they have received from intermediaries, like AHFC; "[] *Fausto, Baird,* and *Greene* all stand for the proposition that a third-party contractor performing services for the entity to which a plaintiff provided her cell phone number stands in the shoes of that entity in a consent analysis." *Toney v. Quality Resources,* 75 F.Supp.3d 727, 735 (N.D. Ill. Dec.1, 2014)(*See, e.g., Baird v. Sabre,* 995 F. Supp.2d 1110, 1106 (C.D. Cal. Jan. 28, 2014)("No reasonable consumer could believe that consenting to be contacted by an airline company about a scheduled flight requires that all communications be made by direct employees of the airline, but never by any contractors performing services for the airline.")).
[34] Rec. Doc. 30-5 at pp. 3-5, 8-10.

Lastly, the Court must determine whether Carroll provided his prior express consent to receive the disputed phone calls. The Defendant argues that Carroll provided his prior express consent and the phone calls were non-telemarketing and non-advertising in nature. Carroll maintains the phone calls were dual purpose – to perform end of lease maintenance and for the purpose of maintaining a positive relationship with customers to encourage them to lease another Acura vehicle. According to Carroll, because the phone calls had the additional purpose of soliciting further business for Acura, the Defendant was required to obtain Carroll's prior express consent to receive telemarketing and advertising calls.

The Ninth Circuit in *Chesbro v. Best Buy Stores, L.P.* outlined the consent necessary for dual purpose phone calls.[35] In *Chesbro*, Best Buy argued that the purpose of the alleged phone calls were "purely informational."[36] The plaintiff, like Carroll, argued that the purpose of the phone calls was informational and a form of solicitation because he was encouraged to purchase future products from Best Buy.[37] Best Buy argued that the phone calls could not be seen as advertisements or solicitations because no products or services were explicitly mentioned. The court in *Chesbro* held:

> We approach the problem with a measure of common sense. The robot-calls urge the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the [Reward Zone Points], and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other used for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a

---
[35] 705 F.3d 913, 917 (9th Cir. 2012).
[36] *Id.* at 919.
[37] *Id.*
40601

good, product, or service where the implications is clear from the context. Any additional information provided in the calls does not inoculate them.[38]

Here, SGS[39] was asked, "Why does American Honda want to have inspections off premises?"[40] SGS testified:

> Because as I mentioned earlier, it's better for their customers. They're trying to preserve the relationship with the client and keep them as a customer and keeping them in a new automobile. Our service is an outsource service that for our customers was previously done in house. So we're just working as an agent in extension of American Honda. In a way it's an extension of sales. Not as an extension to sell our service, but an extension to keep that customer happy and engaged with American Honda.[41]

Carroll argues that, "Given this stated purpose, which is similar to that in *Chesbro, Bennett* and *Golan*, the calls constitute either an advertisement or telemarketing, for which prior express written consent is required."[42] The Defendant argues that a common sense view of the phone calls indicates they were for customer service purposes. SGS further argues that "[the] cases establish the need for a close nexus between the communication and the actual promotion of 'goods' or 'services' in exchange for money."[43] Based on the evidence contained in the record and the relevant jurisprudence, the Court finds that the purpose for the phone calls was dual - customer service and to solicit future sales and revenues. The Defendant presented no evidence that Carroll provided prior express written consent to receive telemarketing and advertising calls. The Court finds that Carroll has presented summary judgment evidence of his TCPA claim. Accordingly, the

---

[38] *Id.* at 918.
[39] Rec. Doc. 26-6, p.1. SGS was deposed through Anthony Perkins, its designated representative.
[40] *Id.*, p. 8, ll. 5-6.
[41] *Id.* at ll. 7-18.
[42] Rec. Doc. 30, p. 7.
[43] Rec. Doc. 32, p. 4.
40601

Defendant's *Motion for Summary Judgment* on Carroll's TCPA claim is DENIED.

### C. Carroll's Louisiana State Law Claims

The Defendant moves for summary judgment on Carroll's state law claims including: invasion of privacy,[44] Nuisance,[45] and Conversion.[46] This Court has held that "Louisiana courts have allowed tort actions for invasion of privacy which involves the basic right of a person to be let alone in his private affairs."[47] Carroll must come forward with summary judgment evidence that the Defendant's conduct was "unreasonable and […] seriously interfere[d] with [his] privacy interest."[48] Carroll attempts to defeat summary judgment by alleging that, "because [he] did not consent to receiving automated calls on his wireless phone, a valid state law claim for nuisance, invasion of privacy and conversion has been asserted."[49] A conclusory argument that he did not consent to the phone calls, without some summary judgment evidence of unreasonable and serious interference with his privacy interests, will not defeat the Defendant's motion for summary judgment on his invasion of privacy claim.[50] Accordingly, the Defendant's *Motion for Summary Judgment* on Carroll's invasion of privacy claim is GRANTED.

The Defendant argues that Carroll's nuisance claim must fail because a nuisance action under Louisiana law stems from a real property interest.[51] Under Louisiana law a nuisance action is derived from the invasion of a real property interest.[52] A plaintiff

---

[44] Rec. Doc. 26-1, p. 11.
[45] *Id.* p. 13.
[46] *Id.* p. 14.
[47] *Walker-Jones v. La Ass'n. of Educators*, No. 15-cv-1584, 2016 WL 1169473 at *2 (M.D. La. Mar. 22, 2016).
[48] *Id.*
[49] Rec. Doc. 30, p. 10.
[50] *See supra* note 25.
[51] Rec. Doc. 26-1, p. 13.
[52] *East Feliciana Parish Police Jury v. Guidry*, 04-1197, pp. 10-12 (La. App. 1st Cir. 8/10/05); 923 So.2d 45, 51-52.
40601

alleging nuisance must claim real damage to their property – mere inconvenience is not sufficient.[53] Carroll again attempts to defeat summary judgment by alleging, that "because [he] did not consent to receiving automated calls on his wireless phone, a valid state law claim for nuisance, invasion of privacy and conversion has been asserted."[54] Carroll offers no evidence that he had a real property interest that was disturbed by these alleged phone calls, or that he suffered real damage to his property. Accordingly, the Defendant's *Motion for Summary Judgment* on Carroll's nuisance claim is GRANTED.

Lastly, the Defendant argues that Carroll's state law conversion claim fails as a matter of law.[55] The Louisiana Supreme Court has held, "a conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion."[56] Carroll again uses the omnibus statement, "because [he] did not consent to receiving automated calls on his wireless phone, a valid state law claim for nuisance, invasion of privacy and conversion has been asserted,"[57] as an attempt to defeat the Defendant's motion for summary judgment. Carroll's conclusory allegation fails to demonstrate how the Defendant's phone calls divested him of his possessory rights over his cellphone. Accordingly, the Defendant's motion for summary judgment on Carroll's conversion claims is GRANTED.

---

[53] *Id.*
[54] Rec. Doc. 30, p. 10.
[55] Rec. Doc. 26-1, p. 15.
[56] *Quealy v. Paine, Webber, Jackson & Curtis*, 475 So.2d 756, 760 (La. 1985).
[57] Rec. Doc. 30, p. 10.

40601

## III. CONCLUSION

For the reasons stated above, Defendant's *Motion for Summary Judgment* on Carroll's TCPA claim is DENIED, and Defendant's *Motion for Summary Judgment* on Carroll's state law claims is GRANTED.[58]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 21, 2017</u>.

                                        */s/ Shelly D. Dick*

                              **JUDGE SHELLY D. DICK**
                              **UNITED STATES DISTRICT COURT**
                              **MIDDLE DISTRICT OF LOUISIANA**

---

[58] Rec. Doc. 26.
40601