UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAYLOR CARROLL, individually and on behalf of all others similarly situated | * * * | CIVIL ACTION NO. 16-537-SDD-RLB |
| v. | * * | JUDGE:   SHELLY D. DICK |
| SGS AUTOMOTIVE SERVICES, INC. | * * * | MAGISTRATE  JUDGE: RICHARD L. BOURGEOIS, JR. |

*************************************************************************

**MEMORANDUM IN SUPPORT OF
F.R.C.P. RULE 12(B)(6) MOTION TO DISMISS
THE THIRD PARTY COMPLAINT ASSERTED BY SGS
NORTH AMERICA, INC. AGAINST CINDY R. CARROLL**

This Memorandum is submitted in support of Cindy R. Carroll's (hereinafter "Carroll") Motion to Dismiss the Third Party Complaint asserted against her by SGS North America, Inc. ("SGS").  The motion should be granted pursuant to F.R.C.P. Rule 12(b)(6) because SGS has not stated a claim against her upon which relief can be granted.

**I.     SUMMARY OF ARGUMENT**

SGS used an automatic dialing telephone system ("ATDS") to send prerecorded phone messages for a commercial purpose to Taylor Carroll's (hereafter "Plaintiff") cell phone without obtaining prior express written consent – an unlawful act under the Telephone Consumer Protection Act ("TCPA"). In direct contrast to the underlying consumer protection purposes of the TCPA, SGS seeks to have Carroll, a consumer, indemnify it for its own unlawful conduct by claiming it reasonably relied on allegedly incorrect information Cindy Carroll provided in a credit application that was filled out three years earlier at the Acura dealership.

The claims of fraud, intentional and negligent misrepresentation and civil conspiracy asserted by SGS require factual allegations that: 1) SGS justifiably relied on a misrepresented

material fact that Carroll made with the intent to harm or deceive SGS; or 2) that Carroll breached a duty owed to SGS by providing incorrect information.  Moreover, such justifiable reliance or breach of the duty must be the cause of the loss for which SGS seeks indemnification. SGS fails to adequately plead any facts that support these elements, such that this motion must be granted, because:

- The placement of Taylor Carroll's cell phone number in the home phone space on the credit application is ***not*** a misrepresentation of a **material fact** and did not **cause** the litigation costs and damages for which indemnification is sought because the TCPA imposes strict liability on the sender of prerecorded message calls made to *either* cell phones *or* residential land lines.

- SGS's claimed reliance that the phone number, placed in the home phone space on a credit application filled out at the Acura dealership three years earlier, was a residential land line and not a cell number, is **not justified when**:

  - the application was filled out three years before the calls in question were made, for the limited purpose of applying for credit, and neither it nor the vehicle lease contained any identification of SGS, notification of the possibility of an end-of-lease inspection, or express consent to receive robocalls by SGS;

  - there are no facts alleged tending to show SGS took any actions to determine if the number was to a cell or land line; and

  - under the TCPA, in the absence of prior express written consent, SGS's calling program violated the TCPA regardless of whether the number was to a cell or residential land line.

- Carroll, individually or jointly with the dealership, could ***not*** have formed the requisite **intent to deceive** SGS when she filled out the credit application because, as this Court has already found, it contains no consent for, and no notice of, the sending of robocalls by any entity, including SGS.

- Carroll did ***not*** have a **duty** to supply any information to SGS for the purpose of sending robocalls, and the duty was ***not* breached** by providing contact information on a form filled out for the limited purpose of

applying for credit and because listing the phone number as both a cell and "home" phone is accurate.

Moreover, SGS's indemnification claims are not permitted under the TCPA, federal common law, or Louisiana state law given SGS's own active fault.   Further, Carroll adopts and joins in the Motion to Dismiss filed by Plaintiff.

## II.    BACKGROUND INFORMATION[1]

On June 22, 2013, Taylor Carroll's wife, Cindy Carroll, applied for credit in order to lease a car from Acura of Baton Rouge.  The dealership employee who filled out the credit application typed in Taylor Carroll's cell phone number in the box specified for home phone *and* in the box for cell phone numbers.

| Last Name | First Name | Middle | |
|---|---|---|---|
| Carroll | Cindy | R | |
| Address (Residence) | City | State | Zip |
| 3224 Grand Way Ave | Baton Rouge | LA | 70810 |
| Home Phone | Cell Phone | Mailing Address (if different from Home Address) | |
| (225) 268-2606 | (225) 268-2606 | | |

After credit was approved, Cindy Carroll selected a vehicle and, on June 23, 2013, she entered into a lease of the vehicle.   Nearly three years later, SGS sent nine prerecorded calls to Taylor Carroll's cell phone using an ATDS in an attempt to schedule a voluntary and previously undisclosed end-of-lease vehicle inspection.

Taylor Carroll, individually and on behalf of others similarly situated, thereafter filed suit against SGS, a company that operates a business that contracts with vehicle dealers and finance companies (such as American Honda Finance Company "AHFC") to schedule and conduct

---

[1]   Facts set forth in this section are from the Court's ruling on SGS's Motion for Summary Judgment (R. Doc. 40, p. 1, note 5), which were stated to have been drawn from specified documents in the record (R. Docs. 25, 26-1, 30 and 32).

end-of-lease vehicle inspections across the country and attempts to promote buyer satisfaction to encourage repeat purchases.

In the present litigation, all state law claims have been dismissed, leaving only claims under the TCPA, particularly, violations of 47 USC § 227(b)(1)(A)(iii) and (B), which the FCC has interpreted as requiring "prior express written consent for *all* telephone calls using an automatic telephone dialing system  ["ATDS"] or a prerecorded voice to deliver a telemarketing message to **wireless numbers and residential lines.**"[2]  This Court has already found that SGS used an ATDS when leaving the prerecorded messages,  that the calls were made for dual purposes such that prior express written consent was required, and that the credit application and lease "provided no evidence that prior express written consent to receive telemarketing and advertising calls had been obtained."[3]

In diametric contradiction to these findings, SGS, without any factual support, now asserts a Third Party Complaint (R. Doc. 48) against Carroll and the Acura dealership claiming those parties, individually or in concert, intentionally or negligently provided false information concerning Carroll's home phone number on those documents when they "knew, or should have known, that this ... would result in AHFC, or one of its ... contractors [i.e., SGS] attempting to contact Cindy R. Carroll ... by placing a call to Plaintiff's cell phone." (¶ 85). On this basis, SGS

---

[2]  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 19911*, 27 FCC Rcd. 1830, 1838 ¶ 20, 2012 WL 507959 (Feb. 5, 2012) (hereafter "2012 Order") (emphasis added).  The FCC codified the 2012 order at 47 CFR § 64.1200(a), in which prior express consent for calls using ATDS or a pre-recorded voice is needed for: 1) *all* non-emergency calls to cell phones; and 2) all residential lines except when made for emergency, non-commercial, or commercial purposes that do not include advertisement or constitute telemarketing (i.e., solely informational).

[3]  R.Doc 40, at pp. 5-7.

sets forth causes of action in fraud, intentional misrepresentation, and civil conspiracy (¶¶ 91-95) and negligent misrepresentation (¶¶ 96-99), under which SGS claims entitlement to "indemnification, by way of an award of compensatory damages" to remedy all of SGS's losses (¶¶ 95, 99).

## III.   LAW AND ARGUMENT

SGS's Third Party Complaint cannot survive this Motion to Dismiss because it has not, and cannot, set forth sufficient factual matter to show a plausible entitlement to relief under any of the causes of action alleged against Cindy R. Carroll.

### A.   Legal Standards Governing Motion to Dismiss.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted."   "To survive a motion to dismiss, a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face,'"[4] a requirement that is satisfied only "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[5] and which "requires more than labels and conclusions."[6]

Thus, when considering a motion to dismiss, a "court does not accept as true conclusory allegations, unwarranted factual inferences or legal conclusions.[7]   The Court may, however,

---

[4]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added).

[5] *Ashcroft, supra* (emphasis added).

[6]   *Twombly, supra*, 550 U.S. at 555, 127 S.Ct. 1964-65.

[7]   *See, e.g., Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714,726 (5th Cir. 2017) (in evaluating motion to dismiss for

properly consider "documents attached to a motion to dismiss when they are referred to in the complaint and are central to [the] claim,"[8] such as the credit application and lease document attached to this motion, matters of which it may take judicial notice, to include public records, orders, and items appearing in the record of the case.[9]

**B.     Legal elements of the alleged causes of action asserted by SGS against Cindy Carroll.**

SGS has not, and cannot, plead or allege sufficient factual matter to show it can plausibly establish all of the requisite elements of the claims asserted against Carroll.

---

failure to state claim, "the tenet that court must accept as true all allegations contained in complaint is inapplicable to legal conclusions").

[8]   *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).   *See also, e.g., Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); Wright & Miller, *supra*, at § 1366 ("Memoranda of points and authorities as well as briefs and oral arguments ... are not considered matters outside the pleadings for purposes of conversion. The same is true for various types of exhibits that are attached to the pleadings, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are "central" or "integral" to the pleader's claim for relief.").   The lease and credit application are, thus, properly referenced in the context of this motion.   *See, e.g.,* SGS's Third Party Complaint (R. Doc. 48) at ¶ 83 ("Plaintiff's telephone number was provided to SGS **via a form**.... **This form** was filled out by Cindy R. Carroll"); ¶ 84 ("Cindy R. Carroll ... knew that the telephone number **listed on this form** ..."); ¶ 85 ("... placing of this telephone number **on the form**"); and ¶ 97 ("... representations **on the forms**...").

[9]   *Nabors Drilling U.S.A. L.P. v. Twister Expl., L.L.C.*, No. Civ. A. 01-2109, 2002 WL 287728, *1 (E.D. La. Feb. 26, 2002) (emphasis added), <u>citing</u> 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1356 (2d ed.1987) [which is now set forth at 5C Wright & Miller, *supra*, § 1364 (3d ed. 2017)]. The documents referenced in this motion are contained in the suit record: credit application – R.Doc. 26-2 (p. 63), R. Doc. 26-7 (p.8) and R. Doc. 30-1; and lease – R.Doc. 26-2 (pp. 64-67), R.Doc. 26-7 (pp. 4-7) and R.Doc. 30-4.

**Fraud**: The three basic elements to an action for fraud are: 1) a misrepresentation, suppression or omission of a material fact; 2) an intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and 3) resulting damage.[10]

**Intentional Misrepresentation**: To succeed in a claim for intentional misrepresentation, the petition must contain allegations of 1) a misrepresentation of material fact; 2) made with the intent to deceive; and 3) causing justifiable reliance with resulting injury.[11]

**Civil Conspiracy**: To recover under this theory, a plaintiff must provide evidence that an agreement existed among the defendants to commit the intentional tort, which they actually committed in whole or part, that caused the plaintiff's injury.[12]

**Negligent Misrepresentation**: To recover for negligent misrepresentation under Louisiana law, a plaintiff must establish the existence of: 1) a legal duty to supply correct information; 2) breach; and 3) damages resulting from justifiable reliance on misrepresentation.[13]

---

[10]   *See, e.g.,* La. C.C. art. 1953; *Chateau Homes by RJM, Inc. v. Aucoin*, 2011-1118 (La. App. 5 Cir. 5/31/12), 97 So.3d 398, 404, *writ denied*, 2012-1526 (La. 10/12/12), 98 So.3d 872, citing *Schaumburg v. State Farm Mut. Auto. Ins. Co.,* 421 Fed.Appx. 434, 442 (5th Cir.2011).

[11]   *See, e.g., Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. Civ. A. 04-0997, 2005 WL 1309153, *3 (E.D. La. May 19, 2005), citing *Guidry v. U. S. Tobacco*, 188 F.3d 619, 627 (5th Cir. 1999).

[12]   *See, e.g., Ross v. Conoco, Inc.*, 02-0299 (La. 10/15/02), 828 So.2d 546, 551-52; and *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir. 1995) ("plaintiff must ... prove an unlawful act and assistance or encouragement ... [which] must be of such character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy").

[13]   *Abbott v. Equity Grp., Inc.*, 2 F.3d 613 (5th Cir.1993).

**C.   No plausible entitlement to relief under the claims of intentional and negligent misrepresentation because SGS's reliance is <u>not justified</u>.**

Under Louisiana law, as discussed above, to state actionable negligent and intentional misrepresentation claims, SGS must establish it was **justified** in relying on Carroll's alleged misrepresentation.   All that SGS has alleged in this regard are bald conclusory statements that, "SGS, as the ultimate recipient of these statements, reasonably relied upon them to its detriment" and "SGS relied upon the misrepresentations."[14]   These factually unsupported blind reliance allegations are in stark contrast to the "continuing responsibility" placed on telemarketers, such as SGS, under the TCPA, to "check the accuracy of their records to ensure that they are not inadvertently calling mobile numbers."[15]

SGS's reliance, furthermore, is ***not justified*** because, as a sophisticated telemarketer, it should recognize the growing number of adults, like Taylor and Cindy Carroll, that have no land-line,[16] such that – as recognized by some courts – their cell phone "is in fact their home

---

[14]   R. Doc. 48, at p. 19 at ¶ 93 and p. 20 at ¶ 98.

[15]   *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 2 n.6 (3rd Cir. 2013) ("Dell argues that Gager's phone should be treated as if it were a land-line because she listed her cellular phone number as her ***home phone*** on the credit application she filed with Dell. This argument is unavailing. Callers have a continuing responsibility to check the accuracy of their records to ensure that they are not inadvertently calling mobile numbers."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 19215, 19219-20 ¶ 11 (Sept. 21, 2004) (declining to extend safe harbor provisions to calls made erroneously or inadvertently to wireless numbers); and *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012) ("companies who make automated calls bear the responsibility of regularly checking the accuracy of their account records").

[16]   According to the FCC, as of the second-half of 2013, 39% percent of adults have gone completely wireless.   *See* 2015 Order, 30 F.C.C.R. 7961, 7970 at ¶ 17, 2015 WL 4387780, *5. This percentage must surely have risen in subsequent years. *See Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, – U.S. –, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), as revised (Feb. 9, 2016) (noting recent statistics suggesting that over 40% of American households

phone."[17]   Given these statistics, SGS is not justified in equating "home phones" with "residential land-lines" and should not have designed a call campaign that relied on information from forms requesting only home and cell phone numbers. As for the Carrolls, Taylor Carroll's cell number was their "home phone," and listing it as such was not and cannot be a misrepresentation of any type.

Moreover, neither the credit application or the lease contain any provisions concerning an end-of-lease inspection, and this Court has previously found they present no evidence of any express written consent to receive telemarketing and advertising calls. Under these circumstances, this Court should find that SGS's reliance on the phone numbers placed in the credit application was not justified and cannot support its claims for intentional or negligent misrepresentation.

Louisiana jurisprudence supports this conclusion. For example, in *Simmons, Morris & Carroll, LLC v. Capital One, N.A.*,[18] a law firm that fell prey to a check scam sued its bank to recover funds the firm had wired from its client trust account to what it believed was an overseas collection client based upon confirmation from a bank employee that the check representing the funds to be wired had cleared the account.   Although a teller had mistakenly treated the foreign check as a deposit, the deposit to the law firm's account was reversed on the same day, a fact that

now rely exclusively on wireless telephone service; and, thus, recognizing that, to ensure residential privacy, residential restrictions in the TCPA must extend to cell phones).

[17]   *Gomez v. Campbell-Ewald Co., supra*; and *Woods v. Santander Consumer USA, Inc.*,   Civ. A. No. 14-02104 (N.D. Ala. March 30, 2017), 2017 WL 11780030, *   in which the district court recognized the point made in *Gomez, supra,* that residential privacy should be extended to cell phones because "in many households a cell phone *is* the home phone") (emphasis in *Gomez*).

[18]   49,005 (La. App. 2 Cir. 6/27/14), 144 So.3d 1207, *writ denied*, 2014-1900 (La. 11/14/14), 152 So.3d 886.

was readily ascertainable if the firm had accessed its account online.   Under these facts, the court determined the firm had *not* "proved the element of justifiable reliance required to recover for ... negligent misrepresentation."[19]   *See also Tres' Chic in a Week, LLC v. Home Realty Store*,[20] in which the plaintiff's reliance on dimensions set forth in the MLS listing for a home purchased "as is" and where it had not taken advantage of the opportunity to verify the dimensions was deemed not justified such that its negligent misrepresentation claim was properly dismissed via summary judgment.   Also informative is *Allstate Ins. Co. v. Cmty. Health Ctr., Inc.*,[21] in which the court assessed the fraud, intentional and negligent misrepresentation claims by resort to the Restatement (Second) of Torts § 545A (1977), in which it is stated: "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if ... its falsity is obvious," which occurs when "it can be discerned on 'the slightest inspection.'"

The numbers dialed by SGS were associated with vehicle leases that were at least three years old and perhaps older.   Over this period of time the owners of some of these numbers changed and some were likely ported to cell from landlines and landline to cell.   Similar to the foregoing cases, SGS should have independently determined the accuracy of the numbers provided to it by using any number of web sites to validate owner of the number or conduct reverse phone checks to determine if any numbers were assigned to cell phones.   There are no facts alleged in SGS's Third Party Complaint that it took any such actions.   Its blind reliance on three-year old phone information provided in a form filled out for the limited purpose of applying

---

[19]   *Id.* at 1217-18.

[20]   07-1373 (La. App. 1 Cir. 7/17/08), 993 So.2d 228, 235.

[21]   No. Civ. A. 08-810, 2014 WL 1689701, *13 (M.D. La. April 29, 2014), *rev'd on other grounds and remanded*, 605 Fed.Appx. 269 (5th Cir. 2015).

for credit is not justified.  SGS has not shown a plausible entitlement to relief against Carroll under its claims of intentional and negligent misrepresentations.

### D.  The alleged incorrect information is __not a material fact__.

The element of a misrepresented *material* fact is required to assert a claim of fraud and intentional misrepresentation under Louisiana law.  Applying Louisiana law, the Fifth Circuit has explained that "materiality expresses the notion that the deceived party would have acted differently had he known the truth about the fact misrepresented."[22] Carroll respectfully submits the information in the credit application was neither a misrepresentation,[23] nor material.

SGS bases its claims of fraud and intentional misrepresentation against Carroll by claiming she misrepresented her home phone number in the credit application by providing Taylor Carroll's cellular phone number in the space provided for home phone numbers, that it relied on the fact that the phone number was for a residential line when it tried to contact her, and that it otherwise would not have called the cell phone number provided.  In addition to their being no misrepresentation, as Taylor Carroll's cell number was their home number, the phone number is not material.  This is because by leaving a pre-recorded message using an ATDS without prior consent, **it does not matter whether SGS believed it was calling a residential line or a cell phone**.

---

[22]  *Mamco, Inc. v. American Employers Ins. Co.*, 736 F.2d 187, 190 n.6 (5th Cir. 1984).

[23]  As discussed above, the phone number information in the credit application is not a misrepresentation because, as recognized in the jurisprudence, for persons that are wireless, such

In this regard, the TCPA provides:

§      227.      **Restrictions on use of telephone equipment**

              \*\*\*

b)      Restrictions on use of automated telephone equipment

    (1)      Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

    (A)      to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–

        \*\*\*

        (iii)      **to any telephone number assigned to a ... <u>cellular telephone service</u>**, ... unless such call is made solely to collect a debt owed to or guaranteed by the United States;

    (B)      to initiate any telephone call **to any <u>residential telephone line</u> using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party**, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted ....

The FCC has interpreted these provisions as requiring "prior express written consent for all telephone calls using an automatic telephone dialing system   ["ATDS"] or a prerecorded voice to deliver a telemarketing message to wireless numbers and residential lines."[24]   Thus, when an ATDS is used to make a telemarketing call and a pre-recorded message is left (i.e., a robocall), and prior express written consent has not been obtained, as is the situation in this case as

---

as the Carrolls, their cellphones are their home phone. SGS's attempt to equate home phones with residential land lines must be rejected.

[24]   2012 Order, 27 FCC Rcd. at 1838, ¶ 20.   The FCC codified the 2012 order at 47 CFR § 64.1200(a), in which prior express consent for calls using ATDS or a pre-recorded voice is needed for: 1) *all* non-emergency calls to cell phones; and 2) all residential lines except when made for emergency, non-commercial, or commercial purposes that do not include advertisement or constitute telemarketing (i.e., solely informational).

previously found by the Court, it is unlawful to leave pre-recorded messages to both cell phones **and** residential lines.

Because the TCPA was violated by SGS's conduct irrespective of whether the phone number was for a cell phone or a residential line, the misrepresentation alleged by SGS as having been made by Carroll is **not material**.   SGS, therefore, has not alleged a viable claim of fraud or intentional misrepresentation.

> **E.    No plausible entitlement to relief under the claims of fraud or intentional misrepresentation because the requisite <u>intent to deceive</u> has not been shown.**

SGS's Third Party Complaint also fails to set forth factual matters that plausibly show Carroll had an intent to harm or deceive SGS as is required to establish a right to relief under its fraud or intentional misrepresentation claims.   To find otherwise, the Court would have to determine that Carroll knew, at the time she provided Taylor Carroll's cell phone number *for the purpose of applying for credit*, that robocalls from SGS would be sent three years later to schedule an end-of-lease inspection and to promote the sale or lease of a new vehicle. Such an inference cannot be made.

A review of these documents establishes that the only intent that may plausibly be inferred is that Carroll agreed that Taylor Carroll's number could be used for purposes of applying for credit: his number is listed only on the credit application and not on the lease document, all certifications and authorizations set forth in the credit application relate only to the purpose of obtaining credit,[25] and nowhere in either document are end-of-lease inspections

---

[25]   *See* Ex. A, Credit Application, in which, e.g., it is stated "I have completed this **application to obtain credit**, ... I understand and agree that **this application and related credit information** will be forward to AHFC .... I authorize the Seller/Lessor, and AHFC (collectively "you") to

mentioned.   Moreover, as this Court has already determined, such documents provide no evidence of "prior express written consent to receive telemarketing and advertising calls." (R. Doc. 48).

Given the limited purpose of the documents and the absence of any notification that end-of-lease inspections or solicitation calls would occur, Carroll could not have foreseen the existence of SGS or the possibility that she would receive robocalls for this or any other purpose. Because the calls were not foreseeable, Carroll could not have formed the requisite intent to harm or deceive SGS. On this additional basis, SGS's claims of fraud and intentional misrepresentation cannot survive this Motion to Dismiss.

     **F.**    **No plausible entitlement to relief under the claims of fraud, intentional or negligent misrepresentation because its damages were not <u>caused by</u> the misrepresentation.**

To recover under any of the claims asserted against Carroll, the alleged damages must have been **caused by** justified reliance on the alleged misrepresentation.   Because SGS violated the TCPA regardless of the type of phone called (cell or residential land line), the damages that SGS seeks to recover from Carroll were ***not*** caused by the phone number provided but solely by SGS's own conduct in: 1) using an ATDS to leave pre-recorded messages on telephones without having ensured prior express written consent had been obtained;[26] 2) designing a call campaign that relied on numbers provided years previously without scrubbing them to confirm the type of

---

make inquiries and obtain information about me as You deem appropriate **for the purpose of evaluating this application**." (emphasis added).

[26] *See* ¶ 86 of SGS's Third Party Complaint in which it concedes express written consent had not been obtained.  *See also* this Court's prior ruling (R.Doc. 40), at p. 7, in which – having reviewed the lease and credit application – notes they "presented no evidence that Carroll provided prior express written consent to receive telemarketing and advertising calls."

phone number and whether they had been reassigned; and 3) equating home phone with residential land line despite the fact that a growing percentage of adults, including the Carrolls, are wireless only and the recognition in the industry that, in such cases, cell phones are treated as home phones.   On this additional basis, SGS has not alleged a plausible claim for relief against Carroll.

> **G.     No plausible entitlement to relief under the claim of civil conspiracy because an <u>agreement</u> to intentionally harm SGS is not alleged and does not exist.**

To allege a colorable claim of civil conspiracy under Louisiana law there must be factual allegations sufficient to plausibly show the existence of an underlying agreement between Carroll and the Acura dealership to perpetrate the intentional tort of fraud or intentional misrepresentation.   All that SGS has alleged, however, is that "Cindy R. Carroll and Acura of Baton Rouge conspired, combined, or agreed to make the false, misleading, and/or untrue statements described herein."[27]

A quick review of the landmark case of *Bell Atlantic Corp. v. Twombly,*[28] which notably also involved a claim of conspiracy, shows this bare allegation is insufficient to survive a motion to dismiss.   As set forth in *Twombly*, to satisfy Rule 8's pleading rule there must be "enough fact to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement," that "more than labels and conclusions" are required, and a "bare assertion of conspiracy will not suffice."[29]

---

[27]   R. Doc. 48, at p. 19, ¶ 92.

[28]   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[29]   *Id.*, 550 U.S. at 555-56, 127 S.Ct. at 1965.

SGS has not alleged sufficient factual matters to show the existence of the requisite agreement and, as discussed above, its allegations are insufficient to set forth a colorable claim of fraud and intentional misrepresentation.   For both of these reasons, SGS is entitled to no relief under its alleged claim of civil conspiracy.

**H.   The negligent misrepresentation claim fails because Carroll has no duty and did not breach any duty owed to SGS, and the information provided did not cause SGS's loss for which it seeks indemnification.**

Louisiana law applies a duty-risk analysis to negligent misrepresentation claims, such that plaintiffs must prove the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care, a breach of the duty, and the risk of harm was within the scope of protection afforded by the duty breached.[30]   The initial inquiry is "whether, as a matter of law, a duty is owed to this particular plaintiff to protect [it] from this particular harm."[31]   Generally, a duty to disclose or supply correct information does "not exist absent some confidential, fiduciary, or other special relationship which, under the circumstances of the case, justifies [its] imposition."[32]

Thus, to answer the question of whether a duty is owed requires an examination of the context in which the information is provided.   For example, in *Devore v. Hobart Mfg. Co.*,[33] the Louisiana Supreme Court found there was no cause of action against the school board for

---

[30]   *See, e.g., Smolensky v. McDaniel*, 144 F.Supp.2d 611, 620 (E.D. La. 2001), <u>citing</u>, *Daye v. General Motors Corp.*, 97-1653 (La. 9/9/98), 720 So.2d 654, 659.

[31]   *Id.*, <u>citing</u> *Barrie v. V.P. Exterminators, Inc.*, 93-0679 (La. 10/18/93), 625 So.2d 1007, 1016.

[32]   *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc., supra*, 2005 WL 1309153, at *4, <u>citing</u> *Wilson v. Mobil Oil Corp.*, 940 F.Supp. 944, 955 (E.D. La. 1996).

[33]   367 So.2d 836 (La. 1979).

negligent misrepresentation as it had no duty to provide "failproof information" concerning the manufacturer of kitchen equipment in response to a query from an attorney representing an employee who had allegedly been injured by the equipment.   According to the Court, the school board's status as employer and equipment custodian did not give rise to a duty, nor could it "be presumed that [defendants] knew or should have known that plaintiff's attorney would rely entirely upon the information furnished, [or] make no independent investigation ..."[34] to validate the information.   Likewise, in *McLachlan*, the U.S. Fifth Circuit refused to find that a life insurance carrier had a duty to reveal to the policy applicant all of the results of the medical tests it had performed prior to issuing the policy because the testing was done for the insurer's own purposes of issuing a policy and not for the protection of plaintiff's health.[35]

These cases show, that in the circumstances of this case, a duty is not properly placed on Carroll.   Her status as a credit applicant does not set forth a duty outside the context of providing information for the purpose of applying for credit, and just as in *Devore*, there was nothing set forth in the credit application from which she knew or should have known that SGS would "rely entirely upon the information furnished [or] make no independent investigation" in order to validate that consent was given for the number provided before it sent the robocalls to Taylor Carroll.   There being no duty, there can be no breach, and as discussed above the information provided was not the cause of the damages.   SGS, thus, has no plausible entitlement to recovery under its negligent misrepresentation claim.

---

[34]   *Id.* at 839.

[35]   *McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 628-31 (5th Cir. 2007).

I.      **SGS's claim for indemnification is disallowed under the TCPA, federal common law, and Louisiana state law.**

Lastly, SGS has no right to the relief it seeks from Carroll – "indemnification, by way of an award of compensatory damages." (R.Doc. 48, ¶¶ 95, 103).   As a matter of law, SGS is not entitled to indemnification under federal or Louisiana state law such that it has no right to the indemnity relief it seeks.

Numerous courts have recognized that a right to contribution or indemnification is not afforded under the TCPA or federal common law.[36]   Moreover, as discussed above, the absence of factual matters sufficient to show plausible entitlement to relief against Carroll under its state law claims of fraud, intentional and negligent misrepresentation, and civil conspiracy requires such claims to be dismissed and eliminates any basis for SGS's claim for indemnity under Louisiana state law.   Furthermore, under Louisiana tort law, there is no right to indemnity when the liability of the party seeking it cannot be regarded as technical, vicarious, constructive or derivative.[37]   Here, there are no facts to show SGS satisfied its duty under the TCPA to check

---

[36]   *See, e.g., Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals*, No. Civ. A. 09-4100, 2011 WL 6156800, *2 (N.D. Ill. Dec. 9, 2011) (TCPA does not provide a right to contribution or indemnity); *Environmental Progress, Inc. v. Metropolitan Life Ins. Co.*, No. Civ. A. 12-80907, 2013 WL 12084488, *2 (S.D. FL April 1, 2013) ("since the TCPA does not expressly authorize contribution or indemnity, such rights do not exist"); and *Kim v. Cell Partnership*, No. Civ. A. 14-312, 2016 WL 871256, *3 (N.D. Ind. Jan. 29, 2016) (recommending the motion to dismiss be granted as to the third party plaintiff's claim for indemnification "because there is no federal cause of action for indemnification under the TCPA").

[37]   *See, e.g., Lombard v. New Orleans Naval Support Activity*, No. Civ. A.03-3020, 2004 WL 2988483, at *6 (E.D. La. Dec. 10, 2004), <u>citing</u> *Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99), 739 So.2d 183, 186, and *Hamway v. Braud*, 01-2364 (La. App. 1 Cir. 11/8/02), 838 So.2d 803, 806 ("there is no right to indemnity when the liability of the party seeking it cannot be regarded as technical, vicarious, constructive or derivative"); and *Threlkeld v. The Haskins Law Firm*, 922 F.2d 265, 267 (5th Cir. 2001) ("Louisiana law allows claims for tort indemnity only when the third-party plaintiff's negligence is passive or its fault is only technical or theoretical").

the accuracy of its records before it sent robocalls and left prerecorded messages on Taylor Carroll's cell phone.  This action constitutes active fault on SGS's own part which serves to eliminate any right to tort indemnity.

**IV.     CONCLUSION**

Because SGS has not set forth factual matter to show plausible entitlement to relief under the fraud, intentional and negligent misrepresentation and civil conspiracy claims it asserted against Cindy Carroll, and has no legal right to obtain indemnity under Louisiana state or federal law, the Motion to Dismiss SGS's Third Party Complaint as asserted against Cindy Carroll must be granted and the complaint dismissed.

RESPECTFULLY SUBMITTED:

**WILLIAMSON, FONTENOT, CAMPBELL & WHITTINGTON, LLC**

/s/ Robert L. Campbell
**Robert L. Campbell**
**Bar Roll No. 27986**
955 McClung Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383.4010

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.   Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system. I also certify that, as of the date of this mailing, there are no manual recipients identified to receive this mailing.

Baton Rouge, Louisiana, this 19th day of January, 2018.

/s/ Robert L. Campbell
ROBERT L. CAMPBELL

- 19 -