UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAYLOR CARROLL, individually and on behalf of the Class | * * | CIVIL ACTION NO. 16-537-SDD-RLB |
| | * | JUDGE: SHELLY D. DICK |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE: BOURGEOIS |
| SGS AUTOMOTIVE SERVICES, INC. | | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

This case, seeking statutory damages for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, is ideal for class certification.

➢ Plaintiff Taylor Carroll and the putative class members' claims under the TCPA arise from the same conduct by SGS North America, Inc. ("SGS"), to-wit: the transmission of hundreds of thousands of identical prerecorded message calls ("robo-calls" or, as described by SGS, "call blasts") by use of the same predictive dialer equipment to cellular and residential telephone numbers provided by American Honda Finance Corporation ("AHFC") who procured them from credit applications.

➢ The same questions of law and fact apply to each claim and may be resolved through the use of common evidence.

➢ Plaintiff's proposed "Prerecorded Message Class" is readily ascertainable using SGS's own records.

➢ Plaintiff's proposed "Cell Phone Class" is readily ascertainable from SGS's own records and use of Anya Verkhovskaya's proven methodology of identifying cellular telephone numbers.

The class action procedure is the most efficient method by which to adjudicate this dispute and is the most effective way of achieving the remedial purpose underlying the TCPA – to "protect

consumers from unwanted automated telephone calls,"[1]  which Congress has viewed as a nuisance and invasion of privacy.[2]

## I.    ELEMENTS OF TCPA CLAIMS

The TCPA makes it "unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) ... using any automatic telephone dialing system or an artificial or prerecorded voice ...to any telephone number assigned to a ... cellular telephone service...." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party...." § 227(b)(1)(B).

## II.    PROPOSED CLASS DEFINITIONS

While many courts have certified a singular class consisting of prerecorded message calls to both cellular telephones and residential land lines,[3] Plaintiff offers the option to the Court of certifying either a "Prerecorded Message" class, a "Cell Phone" class, or both -- the elements of a TCPA violation and, thus, the requirements of class certification, involving calls made to cellular telephones differ from those involving prerecorded message calls to residential telephone lines.

### A.    Prerecorded Message Class.

Plaintiff proposes the following definition for the "Prerecorded Message Class:"

<u>**"Prerecorded Message Class"**</u>

All persons in the United States to whom, between October 16, 2013 and May 17, 2017, SGS North America, Inc. ("SGS") made an artificial or prerecorded telephone message

---

[1]  *Gager v. Dell Fin. Srvcs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013), <u>quoting</u> S.Rep. 102-178, at 5 (1991).
[2]  *Mims v. Arrow Financial Srvcs., LLC*, 132 S.Ct. 740, 745 (2012).
[3]  *See, e.g., Fisher v. MJ Christensen Jewelry, LLC*, No. 15-0358 (D.C. Nev. Mar. 6, 2018), 2018 WL 1175215, *3 (finding defendants are not prejudiced by class containing cell phones and landlines because TCPA's parallel provisions are nearly identical); *Wakefield v. ViSalus, Inc.*, No. 15-1857 (D.C. Ore. Aug. 21, 2019), 2019 WL 3945243, *6 (rejecting that the type of phone is an individualized issue because liability under the TCPA attaches to both and statutory damages are the same).

using its dialing system, at a telephone number supplied by American Honda Finance Corporation ("AHFC") to SGS, which was identified as a home number and resulted in Status ID codes on SGS's records of "801 – Left message on answering machine – Home" and/or "1201 – Left message with other – Home," regarding vehicles that were the subject of a vehicle lease signed between the dates of October 1, 2009 and September 30, 2013. Excluded from the class are all judges and court personnel employed by the Court assigned to this matter, and all officers, directors, and employees of Defendant.

Membership in this class can be ascertained from SGS's own business records, which SGS has admitted constitutes the best evidence that a prerecorded message was left with a particular telephone number.[4] Telephone numbers were designated as home numbers in the data supplied by AHFC to SGS. Calls to these numbers were then made by SGS and designated on its records with Status ID (call disposition) codes of "801 – Left message on answering machine – Home" and/or "1201 – Left message with other – Home."[5] Whether the telephones are residential landlines or cell phones is not material to the Prerecorded Message Class. The Prerecorded Message Class is limited to prerecorded messages of the type received by Taylor Carroll (described *infra*) that resulted in Status ID codes of 801 and/or 1201, as documented in SGS's records.

**B.     Cell Phone Class.**

Plaintiff proposes the following alternative/joint class definition for a "Cell Phone Class:"

<u>**"Cell Phone Class"**</u>

All persons or entities in the United States to whom, between October 16, 2013 and May 17, 2017, SGS North America, Inc. ("SGS") made an artificial or prerecorded telephone message from its dialing system, at a telephone number supplied by American Honda Finance Corporation ("AHFC") to SGS, which was designated on SGS's records with Status ID codes of "801 – Left message on answering machine – Home," "802 – Left message on answering machine – Work," "1201 – Left message with other – Home," or "1202 – Left message with other – Work" and was a cellular telephone number, regarding vehicles that were the subject of a vehicle lease that was signed between the dates of October 1, 2009 and September 30, 2013. Excluded from the class are all judges and court personnel employed by the Court assigned to this

---

[4] Ex. 3, SGS Dep. (Phillips), 72:10-16.
[5] Hereafter, in this brief, the Status ID code "801 – Left message on answering machine – Home" is referred to simply as "801" and the Status ID code "1201 – Left message with other – Home" is referred to simply as "1201."

matter, and all officers, directors, and employees of Defendant.

This definition, while similar to that of the "Prerecorded Message Class," reflects that the "Cell Phone Class" does not distinguish between home and business lines. It includes all persons to whom, using its dialing system, SGS made a prerecorded message call of the type received by Taylor Carroll (described *infra*) on their business or personal cell phone by SGS that resulted in Status ID codes on SGS's records of 801, 1201, "802 – Left message on answering machine – Work" or "1202 – Left message with other – Work."[6]

### C.    Summary of Elements for Inclusion In and Relief by the Class(es).

With regard to the claims brought on behalf of the two proposed classes, the following elements must be established:

| Prerecorded Message Class | Cell Phone Class |
|---|---|
| SGS made a call to a non-business residential land line or cellular telephone. | SGS sent a prerecorded message to a cellular telephone. |
| Using an artificial or prerecorded voice to deliver a message that played.[7] | Using an automatic telephone dialing system. |
| The message was telemarketing or dual purpose.[8] | The message was telemarketing or dual purpose.[9] |
| SGS did not have the recipient's prior express written consent. | SGS did not have the recipient's prior express written consent |

Plaintiff proposes these two classes to provide the Court with alternatives that conform to the evidence submitted herein in support of the Rule 23 certification requirements. Plaintiff does not seek double recovery, asserts the above classes jointly or alternatively, and with the express understanding that, if both classes are certified, recovery under one would preclude recovery under

---

[6]  Hereafter, in this brief, the Status ID code "802 – Left message on answering machine – Work" is referred to simply as "802" and the Status ID code "1202 – Left message with other – Work" is referred to simply as "1202."
[7]  *See Ybarra v. Dish Network*, 807 F.3d 635 (5th Cir. 2015).
[8]  *In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 27 F.C.C. Rcd. 1830, 1841 (2012), at ¶ 28.
[9]  *Id.*

the other. Because the requirements for class certification are different for the two proposed

classes, analysis of both is necessary in the event the Court's decision is reviewed on appeal.

## III.    FACTS

### A.    SGS is a Multi-Billion Dollar Company that Transmitted Millions of Pre-Recorded Message Calls since 2013.

SGS is a global, multi-billion dollar testing, inspection and certification company.[10] Since

at least 2012, SGS has contracted with numerous vehicle finance companies to conduct inspection

services[11] and placed millions of phone calls using its dialing system.[12] Despite the volume of

calls placed and its sophistication, SGS made no effort to comply with the TCPA, even after this

suit was filed.[13]

AHFC is one of the finance companies with whom SGS contracted to perform inspections

in forty-eight states during the class period. The contract between AHFC and SGS provides for

payment to SGS on a per inspection basis. Though not mentioned in the lease documents, AHFC

and SGS promoted pre-term inspections, which were not required and only performed during the

lease term, while the vehicle was still in the lessee's possession.[14] These pre-term inspections

served to provide lessees with information concerning the extent of their end-of-lease liabilities at

a critical point in time when they were required to decide whether to buy, re-lease or select another

---

[10] Ex. 1, SGS Dep. (Perkins), 15:22–16:13; 113:23–114:4.

[11] Ex. 2, SGS Resp to Interrogatory No. 23 in Plaintiff's Third Set of Discovery; Ex. 3, SGS Dep. (Phillips), 116: 2-7; R.Doc. 26-5 at ¶ 3.

[12] Ex. 4, SGS Resp. to Req. for Admission of Fact No. 5. *See also* Ex. 5, 20-page excerpt from SGS call detail records. The call records produced in discovery by SGS, consist of separate excel spreadsheets detailing all calls during annual time periods included in the class period, and include: SGS-00226_CONF.xlsx (07/06/2012-12/31/2012); SGS-00227_CONF.xlsx (01/01/2013-12/31/2013); SGS-00228-CONF.xslx (01/01/2014-12/31/2014); SGS-00229_CONF .xlsx (01/01/2015-12/31/2015); SGS-00230_CONF.xlsx (01/01/2016-12/31/2016); and SGS-00231_CONF.xlsx and SGS-53261_CONF.xsls (01/01/2017-12/31/2017). In this regard, Exhibit 5 is a 20-page excerpt of call records produced in SGS-00230_CONF.xsls, the period of time during which Plaintiff Taylor Carroll received calls. *See also* Ex.6, a 10/13/17 email from SGS counsel explaining ease of opening and sorting such records.

[13] Ex.1, Perkins 48:6-14, 116:23–117:3.

[14] These are distinguished from end-of-lease inspections, which are inspections done at the end of the lease after the vehicle has been returned to dealer.

vehicle. At this point, the lessees were most susceptible to persuasion, which presented an excellent opportunity to present AHFC's "loyalty benefits" program to promptly sell or lease another Honda vehicle.[15] Pre-term inspections were preferred by AHFC because, as explained by SGS's representative, it better served to "maintain that customer and keep that customer and ultimately lease them another vehicle."[16] In this way, "SGS worked "as an extension of sales…to keep that customer happy and engaged with American Honda." [17] This Court previously determined "the purpose of the phone calls was dual – customer service and to solicit future sales and revenues."[18]

To solicit and schedule pre-term inspections from lessees, SGS placed prerecorded message telephone calls to the phone numbers provided to it by AHFC.[19] These calls, placed to residential and cellular telephone numbers, and associated with a particular lease in which consent was not provided, comprise the TCPA claims asserted by the classes.

**B.    Reliable Class Member Information was Provided to SGS by AHFC.**

All persons who lease a Honda vehicle were required to complete a credit application for submission to AHFC.[20] Credit applicants were asked to provide home and work phone numbers. These numbers were transmitted by AHFC to SGS and used in its phone call campaigns.[21]This Court previously examined the AHFC credit application[22] and found it "presented no evidence that Carroll provided prior express consent to receive telemarketing and advertising calls."[23]

---

[15] *See* R.Doc. 130, at pp. 4-5, and deposition testimony referred to therein.
[16] Ex. 1, Perkins 72:11-15; 132:7-22.
[17] *Id.* 76:7-18.
[18] R.Doc. 40, p.7.
[19] Ex. 1, Perkins, 88:23–91:14; Ex. 2, SGS Ans. to Int. No. 12 in Plaintiff's Third Set of Discovery.
[20] Ex. 7, Decl. of Michael J. Greene.
[21] Ex. 1, Perkins 53:12-15, 56:14-21; R.Doc. 26-5 at ¶ 8.
[22] This can be located in the suit record at R.Doc. 30-1.
[23] R.Doc. 40, at p. 7.

Near a lease's expiration date, AHFC electronically transmitted customer data to SGS, which was then populated into SGS's customer database ("Inspection DB").[24] The data provided by AHFC to SGS was extensive: it included the lessees' name, address, lease maturity date, Vehicle Identification Numbers ("VIN"), year/make/model of vehicle, home and work telephone numbers.[25]

**C.    Substantial Similarity of Every "Call Blast" Prerecorded Message Sent by SGS.**

Within 24-hours of receiving each day's data feed from AHFC, and without making any effort to "scrub" the phone numbers to determine if they were wireless numbers,[26] SGS made identical prerecorded message phone calls to every person whose information was provided in the daily uploads – calls it refers to as "call blasts."[27] Thereafter, SGS made additional prerecorded message calls to those same persons using "substantively the same" script.[28] On average, five to eight calls were made to each phone number.[29] The actual calls made to Plaintiff Taylor Carroll's cell phone confirms this pattern.[30] In this same fashion, hundreds of thousands of identical calls were made to class members during the class period.

The scripts of the prerecorded messages received during the class period by Taylor Carroll are nearly identical to those received by the other class members. For instance, all class members received a call nearly identical to that which Plaintiff Taylor Carroll received on his cell phone on May 11, 2016 at 8:32 A.M:

---

[24] Ex. 1, Perkins 47:11-21; Ex. 3, Phillips 21:4-11.
[25] Ex. 3, Phillips 21:12-23; 58:2-16.
[26] Ex. 1, Perkins 52:17–53:8; 57:13-19.
[27] Ex. 3, Phillips 23:1-24:6.
[28] *Id.* 28:10-12; 77:21–78:2; 128:20–129:11.
[29] Ex. 1, Perkins 128:6-10.
[30] *See* R. Doc. 79, at ¶¶ 11 and 12; Ex. 1, Perkins 43:12-44:25; Ex. 5, a 20-page excerpt of the SGS-00230_CONF call records (described in footnote 10); and Ex. 8, a one-page excerpt displaying the seven calls to Taylor Carroll's cell phone between 5/9/16 and 5/20/16, both of which were attached to depositions of both SGS representatives, Perkins and Phillips.

> Hello. This is an important call regarding your lease end vehicle inspection process. SGS Automotive Services is your finance company's inspection provider and is responsible for completing your inspection prior to the end of your lease.  As a reminder, please call SGS to schedule your appointment. The telephone number is 1-800-340-4080, and the operating hours are 8:00 a.m. to 8:00 p.m. Eastern Time Monday through Friday.   Again that telephone number is 1-800-340-4080.   Upon completion of the inspection the SGS inspector will provide two copies of the official condition report; one for your records and one to remain with the vehicle for return.   On behalf of SGS and your lease provider, we look forward to hearing from you soon.[31]

They also received a nearly identical call to that which Plaintiff Taylor Carroll received on May 13, 2016 at 9:13 A.M.:

> Hello. This is SGS Automotive Services calling in regard to your lease end vehicle inspection process. SGS is the contracted company responsible for completing your inspection prior to your vehicle's return. To schedule your appointment visit our secure website at https://schedule.sgsauto.com. You may also contact our customer service center at 1-800-340-4080 8:00 a.m. to 8:00 p.m. Eastern Time Monday through Friday. Again our secure website is https://schedule.sgsauto.com. On behalf of SGS and your lease provider, we look forward to hearing from you soon.[32]

All class members received an additional four to seven prerecorded telephone messages using the above scripted content which are similar to those received by Plaintiff Taylor Carroll and reflected in SGS's call records.[33]  All of them resulted in a Status ID call disposition code of 801, 802, 1201, or 1202.[34]  These are the only "artificial or prerecorded messages" referenced in the class definitions that are at issue in this case.

**D.     SGS's Dialing System.**

SGS produced a "general schematic of the … operation of equipment used in the call center" for phone calls "that are the subject of this suit."[35] SGS readily admitted its system: had "the capacity to automatic dial numbers," in sequential or random fashion or however SGS

---

[31] R. Doc. 79, at ¶ 11.
[32] R. Doc. 79, at ¶ 12.
[33] *See* Ex. 5; *see also* Ex. 8, which shows the details of each call and Status ID call dispositions.
[34] *See* Ex. 5 and 8.
[35] Ex. 1, Perkins 87:1-11 and Ex. 9, deposition exhibit 9, SGS-00033.

configured it; had the "capability to leave prerecorded voice messages;"[36] and "absolutely ha[d] the capability of predictive dialing."[37] Such evidence previously led this Court to find all calls placed by SGS to Carroll were made using an ATDS. (R.Doc. 40, at pp. 4-5).[38] All such calls during the class period were placed by SGS using the same dialing system.[39]

      **E.**      **SGS's Records Capture the Status Codes of Every Call.**

      SGS's calling system records and captures the details of every call it placed during the class period, and includes "who got what call and when," whether a prerecorded message was left or not, whether its predictive dialer was used, what telephone number (home or work) was called in every instance, and the outcome or disposition of each call.[40] SGS has stipulated "that the dialer data produced in the discovery of this matter reflect the contemporaneously made business records of SGS and that the information provided is an authentic copy of those records" and "includes all calls with the exception of calls made that are not answered and confirmation calls."[41] SGS also admits its call detail records constitute the "best evidence" of whether or not a prerecorded message was left with a particular lessee or telephone number.[42]

      SGS's records include: (1) reports from SGS's GLASS user interface, such as the screen shot produced in discovery for Cindy Carroll (which same data and information is available for

---

[36] Ex. 1, Perkins 88:23-89:11; 92:18-22.

[37] *Id.* 88:23-89:11; 91:9-11; 92:11-15; 129:14-25. *See also* Ex. 5.

[38] The requirement of an ATDS is relevant only for the Cell Phone Class and is satisfied based on the above.

[39] SGS made changes to its dialing system effective on or about May 18, 2017. For that reason, the class period at issue in this case does not include any calls after that date so as to ensure that all class calls were made by the identical calling system. All discovery reflects this limited time period. Ex. 3, Phillips 47:10-48; Ex. 10, SGS Resp. to Int. #26 in Plaintiff's 4th Set of Discovery.

[40] Ex 3, Phillips 84:2-4; 91:9-12; 104:5-15.

[41] *Id.* 46:4–47:6.

[42] *Id.* 72:10-16.

every call made by SGS during the class period);[43] and (2) SGS's call record files (discussed at footnote 12), which reflect the details of all calls made during the class period.[44]

In discovery, Plaintiff questioned SGS using Exhibits 5 and 8 (respectively, the 20-page and one-page excerpts of the SGS-00230_CONF call records that include the calls to Taylor Carroll). Referring to those exhibits, SGS admits its call records conclusively show:

| Column Identifier | Column Description | Information Provided in the Column |
|---|---|---|
| B and C | Vehicle VIN Number and Lessee Name | Information identifying the lessee and leased vehicle.[45] |
| D, E. F, G | Lessee Address (street, city, state and zip code) | Information providing lessee's complete address.[46] |
| H and I | Lessee Home and Work Phone | The home and work phone actually called.[47] |
| J | Customer Name | The name of the client/customer on whose behalf the call was made – i.e. Honda.[48] |
| N and O | Status ID and Sub-status Definition | Disposition of each call, including whether a prerecorded message was left. **Absent contrary information in the comments column, every instance where disposition is "left message" evidences that a prerecorded message was left on that number.**[49] Dispositions also evidence when phone numbers are no good.[50] |
| Q | Schedule Comments | Entries in this column evidence actual interactions by SGS with the lessee.[51] |
| R | Create Date | Identifies the date and time of each call.[52] |
| S | Create User | Indicates who made the entry. "Dialer" appears in this column when an entry is made on GLASS by the SGS Call System,[53] and indicates SGS's dialer placed the call using phone numbers from the electronic upload it received from AHFC.[54] |

---

[43] Ex. 11, SGS-0006, an exhibit at both SGS depositions; Ex. 1, Perkins, 93:20–94:7; 122:2-6; 125:2–127:7; 128:2-5; 174:6-21; Ex. 3, Phillips, 57:9–59:18; 60:16–62:4.

[44] Ex. 3, Phillips 27:5-22; 60:16-25; 61:1-4.

[45] Ex. 3, Phillips 84:14-18.

[46] *Id.*

[47] *Id.* 84:5-7.

[48] *Id.*, 82:8–83:3.

[49] *Id.* 84:2-4; 91:9-12; Ex. 1, Perkins 126:16-23.

[50] Ex. 10, SGS Resp. to Plaintiff's 4th Discovery Request, at Ans. to Int. 28.

[51] Ex. 3, Phillips 85:11-16; 91:13-22.

[52] *Id.* 84:19-23.

[53] Ex. 10, SGS Resp. to Plaintiff's 4th Set of Discovery, at Ans. to Int. 34. Relevant only to the cell phone class, SGS defined the term "dialer" as denoted in the call records, to mean that a "predictive dialer" made the call. Ex. 1, Perkins 125:12-16.

[54] Ex. 3, Phillips 83:4-10; 84:24-85:1; 92:4-10.

When the dialer places the call, the Status ID on the call records is "automatically populated" by SGS's calling system.[55] By way of the Status ID, the outcome of each call is memorialized through use of three-digit "Status ID" codes that precede a descriptor of the particular call's status or disposition.[56] Of particular relevance to the calls received by the class members in this matter are the following:

| Disposition Code/Status ID | Meaning of Code |
| --- | --- |
| 801 – Left message on answering machine –Home | "That means the dialer made a call and left a message on the answering machine for their home number."[57] |
| 802 – Left message on answering machine – Work | This means "the dialer left a message on the answering machine at their work phone number that was dialed."[58] |
| 1201 – Left message with other – Home | Same as Code 801.[59] |
| 1202 – Left message with other – Work | Same as Code 802.[60] |

These four Status IDs, as recorded in SGS's call records, establish a prerecorded message, of substantially the same content, was left at the home or work telephone number that was originally provided by AHFC to SGS. Importantly, for the Prerecorded Message Class, SGS's own records allow for the exclusion of all calls that resulted in disposition codes 802 and 1202 – left message at work.[61] The exclusion of calls with these specific dispositions is performed by simple filtering and sorting of the call records.[62]

## F.    No Consent was Provided by any Class Member.

SGS never obtained consent to transmit telephone calls to any of the class members. It also made no independent effort to determine if consent was given by AHFC customers to receive calls,

---

[55] *Id.* 62:2-4.
[56] Ex. 3, Phillips 97:12—99:20; Ex. 10, SGS Resp. to Int. 28 in Plaintiff's 4th Set of Discovery.
[57] Ex. 3, Phillips 99:4-11.
[58] *Id.* 99:12-20.
[59] *Id.* 105:4-6.
[60] *Id.* 105: 7-9.
[61] That distinction is not material to the Cell Phone Class.
[62] *See* Ex. 5 (20 pg. excerpt of call records that show call dispositions for every call in Column N-Status ID and Column O-SubStatus Definition) and Ex. 8 (excerpt of call records that show all calls to Taylor Carroll's cell phone and indicate which ones resulted in a "801-Left message on answering machine – Home" disposition).

is not aware of any document that would "evidence prior express written consent to receive robocalls or prerecorded messages," and maintained no documents of consent.[63]

## IV.    LAW AND ARGUMENT

TCPA claims are well-suited for determination on a class basis, as they involve common conduct, which Congress has sought to deter, that impacts large numbers of persons.[64] Many courts have certified TCPA classes using defendant's own call logs or records and on far less data than what is available in this case.[65] This case presents no obstacles to class certification and this motion should be granted for the reasons that follow.

### A.    Class Certification Standard.

To obtain certification, Plaintiff must satisfy the elements of numerosity, commonality, typicality, and adequacy set forth in Fed.R.Civ.P. Rule 23(a), and at least one of the three alternatives in Fed.R.Civ.P. Rule 23(b). The proposed classes satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods." District courts maintain "wide discretion" in determining whether to certify a class, which decisions are reviewed only for abuse of discretion.[66]

---

[63] Ex. 1, Perkins 47:5-10; 66:5-19; 118:9-22; 138:1-10; and Ex. 3, Phillips 22:10-23.

[64] *See, e.g., Krakauer v. Dish Network,* LLC, 925 F.3d 643, 656 (4th Cir. 2019) ("[g]iven the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition); and *Braver v. Northstar Alarm Services, LLC,* 329 F.R.D. 320, 334 (W.D. Ok. 2018) ("class treatment will provide the fairest and most efficient adjudication of the alleged violations of the TCPA").

[65] *See, e.g., Krakauer, supra,* 925 F.3d at 658 (certifying case where records showed "when calls were placed and whether call went through); *Cleven v. Mid-America Apartment Communities, Inc.,* 328 F.R.D. 452, 467-68 (W.D. Tex. 2018) (certifying class based on standardized searches of defendant records despite manual review possibly being required); *Reyes v. BCA Fin. Servs., Inc.,* No. 16-24077-CIV, 2018 WL 3145807, *7 (S.D. Fla. June 26, 2018) (certifying class because records were helpful, but not infallible, in establishing class membership); *Lavigne v. First Community Bancshares, Inc.,* No. 15-934, 2018 WL 2694457, *7 (D. N.M. June 5, 2018 (finding call records, supplemented by deposit agreements and class member affidavits sufficient); *Dr. Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.,* No. 14-596, 2016 WL 3402621 (S.D. Ill. June 21, 2016) (certifying class despite absence of regularly maintained materials); *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 247 (N.D. Ill. 2014) (certifying class on basis of phone numbers stated in caller records, supplemented by records of third party phone carriers and database providers).

[66] *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468, 471-72 (5th Cir. 1986).

**B.    The Rule 23(a) Requirements of Numerosity, Commonality, Typicality and Adequacy are Easily Satisfied.**

**1.    The class is sufficiently numerous.**

Under Rule 23(a)(1) the numerosity element entails proof that the "class is so numerous that joinder of all members is impracticable." To establish numerosity, Plaintiff need only "demonstrate some evidence or reasonable estimate of the number of purported class members."[67] "Classes containing more than 40 members are generally large enough to warrant certification."[68]

Numerosity is satisfied in this case. A review of SGS's call records, after removing incomplete telephone numbers, toll-free area codes, calls outside the class period, customers other than Honda, those where "dialer" is not set forth in the Create_User field and those that do not contain status ID codes 801 or 1201, indicate that thousands of prerecorded messages were made by SGS on telephone numbers designated by lessees as their home phones. A simple filter and sort of SGS's call records according to these parameters reveals that SGS successfully placed 680,594 prerecorded message calls to 150,625 unique telephone numbers.[69] These calls comprise the Prerecorded Message Class. SGS has admitted this filtering process is easily performed and cannot dispute its own records.[70]

Separately, plaintiff's expert, Anya Verkhovskaya, was able, though accepted methodology, to determine the number of calls made by SGS to *cell* phone numbers. She concluded that SGS successfully made 280,510 prerecorded message calls to 62,579 unique cellular telephone numbers.

---

[67] *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981), citing J. Moore & J. Kennedy, Moore's Federal Prac. § 23.05(3) (1980).
[68] *Lewis v. Cain*, 324 F.R.D. 159, 168 (M.D. La. 2018).
[69] The entire class lists are too voluminous to attach. However, Ex. 5 and 8 provide an exemplar of the call record data, maintained in Excel database format. Records of every call are maintained in this file.
[70] *See* Ex. 3 (Phillips deposition), at 45-47 (stipulation); Ex. 6 (Stanley e-mail).

### 2.    There are common issues of law and fact.

The commonality requirement of Rule 23(A)(2) requires that the class members' claims depend on a common issue of law or fact whose resolution "will *resolve* an issue that is *central to the validity* of each of the [class members'] claims in one stroke."[71]  As the Fifth Circuit recognized in *Yates*, this requirement is satisfied upon a showing that the same challenged conduct creates the same threat of injury.[72]

While only one such common issue is required to satisfy this requirement, here, numerous common issues will be resolved using class-wide proof. A common issue for the Prerecorded Message Class is whether, in making the calls, SGS used an artificial or prerecorded voice that played.[73] For the Cell Phone Class, a common issue is whether the equipment used by SGS to place the calls constitutes an ATDS under the TCPA. Additional common issues for both classes include: whether the phone calls made by SGS to each class member constitute telemarketing or were dual-purpose; whether prior written express consent was obtained; and whether SGS's conduct was knowing and/or willful, entitling class members to treble damages. The commonality requirement is satisfied because the answer to any one of these common questions will resolve an issue that is central to the validity of each of the class members' claims.

Both class periods begin on October 16, 2013 when the TCPA consent requirements changed. In 2012, the FCC issued rules and regulations designed to clarify the term "prior express consent" as used in the TCPA and ruled that, beginning on October 16, 2013, prerecorded calls are made with "prior express consent" **only if** the consent is written and signed by the consumer

---

[71] *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original quote from *Dukes*); *Yates v. Collier*, 868 F.3d 354, 361 (the common contention "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

[72] *See also In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (noting the common answer may "relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct").

[73] *See Ybarra, supra.*

upon disclosure that future prerecorded calls will be received. Such consent cannot be obtained by "requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."[74] On the basis that "the proposed class is limited to individuals who were contacted after the amended FCC regulation," the court in *George v. Shamrock Saloon, II, LLC* determined consent was <u>not</u> an individualized inquiry.[75] The same result is warranted in this case given the class period at issue.

Furthermore, under the law effective October 16, 2013, the FCC clarified that the burden to establish prior written express consent is on the caller.[76] During the class period at issue in this case, a telemarketing call made with a prerecorded voice and/or made or initiated to a cell phone using an ATDS is a violation of the TCPA unless the requisite written consent can be produced.[77] SGS's sworn testimony indicates it did nothing to determine if a consent form had been executed and that it does not have the requisite written proof of consent.[78] In its absence, any argument that consent requires individualized inquiry must fail.[79]

Individualized inquiries also do not exist with regard to the issue of consent. The definitions of both classes include only vehicle leases signed between the dates of October 1, 2009 and

---

[74] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1843-44 (2012). At least one Court has specifically concluded that "any purported consent allegedly obtained through a credit application cannot satisfy the requirements of express written consent under the TCPA." *Trenz v. On-Line Administrators, Inc.*, No. 15-08356, 2017 WL 6539019, *6 (C.D. Cal. Sept. 25, 2017).

[75] No. 17-6663, 2019 U.S. Dist. LEXIS 133884, *21-22 (S.D. N.Y. Aug. 7, 2019). Court further notes, "the common inquiry with respect to all proposed class members is quite simple – is there "an agreement, in writing, bearing [a] signature … that clearly authorizes the [defendants] … to deliver or cause to be delivered … advertisements or telemarketing messages?" *Id.*

[76] *In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 27 F.C.C. Rcd. 1830, 1843-44, para. 33 (2012).

[77] *See, e.g., Meyer v. Bebe Stores, Inc.*, No. 14-0267, 2015 WL 431148, *3 (N.D. Cal. Feb. 2, 2015).

[78] Ex. 1, Perkins 66:5-19; 118:9-22; 138:1-10.

[79] *See, e.g., George v. Shamrock Saloon, II, LLC, supra*, 2019 U.S. Dist. LEXIS 133884, *24 (rejecting any argument of individualized issues because "defendants have not produced in discovery any documentary evidence of consent"); *Bridging Communities, supra*, 843 F.3d at 1126 ("mere mention of a defense is not enough to defeat the predominance requirement"); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298-99 (1st Cir. 2000) (affirming class certification ruling and rejecting waiver defense "woven entirely out of gossamer strands of speculation and surmise" could "tip the decisional scales" on the predominance issue).

September 30, 2013. AHFC's sworn testimony is that no lease signed during this time period contained any language that sought consent from lessees to receive phone calls.[80]  Likewise, AHFC's credit applications lacked any compliant consent language.[81]

### 3. Plaintiff's claims are typical of the classes he seeks to represent.

To demonstrate typicality, the party seeking certification need not show "a complete identity of claims;" rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class."[82] The "typicality" requirement in the Fifth Circuit "is satisfied even if there are factual distinctions between the claims of the class representatives and those of the class, differences in the amount of damages, or even the availability of certain defenses against a class representative."[83] Indeed, as previously recognized by this Court, "[t]he test for typicality is not demanding" and may be found "if the claims…of the representatives and the members of the class stem from…a unitary course of conduct, or if they are based on the same legal or remedial theory."[84]

Here, Taylor Carroll's and the putative class members' claims are not just similar, they are identical. The common legal claim, brought under the TCPA, is that SGS made or initiated phone calls constituting advertising or telemarketing by using an ATDS, or automated or recorded voice, to leave a prerecorded message without prior express consent. Because the TCPA is violated by calls using artificial or prerecorded voices sent to cell phones *and* residential land lines, his claim is typical of the claims of all class members regardless of whether the class members' phone was

---

[80] Whereas SGS did not attempt to obtain consent itself, neither did AHFC until after October 2013.  Prior to October 2013 none of AHFC's lease forms contained any language seeking consent of lessees to receive phone calls.  *See* Ex. 20, Depo. AHFC employee Blair Williams 86:16–90:6. Thus, the proposed class definitions exclude anyone who signed a lease after 9/30/13.

[81] *See* R.Doc. 30-1 (Carroll Credit Application).

[82] *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

[83] *Richard v. Flowers Foods, Inc.*, No. 15-2557, 2018 WL 5305377, *7 (W.D. La. Aug. 13, 2018), quoting *James v. City of* Dallas, 254 F.3d 551, 571 (5th Cir. 2001).

[84] *Lane v. Campus Fed. Credit Union*, No. 16-037, 2017 WL 3719976, *5 (M.D. La. May 16, 2017).

a residential land line or cellular.[85]   Moreover, simple inspection of the SGS call records reveals the exact call dispositions of every call placed to Carroll, and any other member of the class, and confirms the typicality of his claims.[86]

### 4.    Adequacy of representation.

Adequacy under Rule 23(a)(4) concerns "class representatives, their counsel, and the relationship between the two."[87] More specifically, "[a]dequacy encompasses three separate but related inquiries (1) 'the zeal and competence of the representative's counsel;' (2) the willingness and ability of the representative to take an active role in and control the litigation and protect the interests of absentees;' and (3) the risk of 'conflicts of interest between the named plaintiff and the class they seek to represent.'"[88]

As shown by the attached Declarations,[89] undersigned counsel are qualified to litigate this class proceeding as they are experienced attorneys who have substantial experience prosecuting other class action suits and TCPA claims in particular, and they exhibit the requisite "zeal" to represent the class in this matter in light of their efforts in litigating this matter for the past three years.

Likewise, Taylor Carroll has exhibited a willingness to take an active role in this litigation by agreeing to serve as class representative, participating and assisting with discovery, giving his deposition, communicating with class counsel and keeping abreast of developments in this case over the past three years. As an attorney, Taylor Carroll is able to understand the demands required

---

[85] *See, e.g., See, e.g., Fisher v. MJ Christensen Jewelry, LLC*, No. 15-0358, 2018 WL 1175215, *3 (D. Nev. Mar. 6, 2018) (finding defendants are not prejudiced by class containing cell phones and landlines because TCPA's parallel provisions are nearly identical); *Wakefield v. ViSalus, Inc.*, No. 15-1857, 2019 WL 3945243, *6 (rejecting that the type of phone is an individualized issue because liability under the TCPA attaches to both and statutory damages are the same).
[86] *See* Ex. 5 and 8.   All of Carroll's calls resulted in the 801 call disposition.
[87] *Stirman, supra*, 280 F.3d at 563, quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2011).
[88] *Slade v. Progressive Security Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017).
[89] *See* Ex. 16-18.

of him and fully able to communicate with class counsel and absent class members and understand and fulfill the demands placed on him as class representative. Lastly, his interests are aligned with those of the proposed class he seeks to represent as they all seek identical relief – statutory damages under the TCPA stemming from the same course of conduct by SGS.[90]

### C.    The Rule 23(b)(3) Requirements of Predominance and Superiority are Satisfied.

Class actions may be maintained under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," a determination made by assessing: "(A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by…class members; (C) the desirability…of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

#### 1.    Common questions of law or fact predominate over individual issues in the case.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[91] Assessment of this requirement "entails identifying the substantive issues that will control the outcome, assessing which issues predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."[92] The requirement is satisfied when, as

---

[90] R.Doc. 79, ¶¶ 45-47. *See also* Ex. 19, Carroll Decl.
[91] *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997); *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016).
[92] *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003).

here, plaintiffs "advance a viable theory employing generalized proof to establish liability with respect to the class involved."[93]

Common issues, as outlined in Section B.2 above, predominate in this case and SGS's liability based on a determination of those issues can be decided by motion for summary judgment or trial on the merits utilizing class-wide proof. Resolution of the common issues will have class wide application and will be determinative of the merits. There are ***no*** individual issues, much less any that predominate.

### 2.    A class action is superior to other methods available to adjudicate the dispute.

Rule 23(b)(3)'s superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.[94] It involves "a comparative process" of evaluating whether the class mechanism is preferable to individual litigation by class members.[95] Important considerations are: economies of time, effort and expense, and the promotion of uniform decisions as to persons similarly situated, without sacrificing procedural fairness.[96] This Court has previously found that class action procedure "is the superior and most efficient means of resolving the claims" where, as here, "each of the class members…[are] harmed by a common condition and will rely on the same legal theories.[97] The Fifth Circuit has recognized that class actions are the superior method of adjudication when an individual pursuit of the claim would result in a "negative value" suit, i.e., where the possible recovery is less than the cost of bringing suit.[98]

---

[93] *Id.*
[94] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3rd Cir. 2004).
[95] *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013).
[96] FRCP 23(b)(3) 1996 Amendment, Advisory Committee Notes.
[97] *Everson v. Bunch*, No. 14-583, 2016 WL 3255023, *3 (M.D. La. June 13, 2016).
[98] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). *See also, e.g., Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of small individual suits for damages, aggrieved persons may be without any effective redress unless they

Here, a class action is more fair and efficient than the alternatives, which are either (a) tens of thousands of individual lawsuits, each involving a relatively small dollar amount and each requiring the Court to decide, again and again, the same legal issues presented in this case, or alternatively, (b) an abandonment by many of the class members of their legitimate claims against SGS, thus allowing SGS to retain funds to which class members are entitled. In short, class certification is the *only* way to afford relief to those whose claims are too small to justify individual lawsuits.

### 3.    Rule 23(b)(3)'s four factors are satisfied.

The four pertinent factors mentioned in the last portion of Rule 23(b)(3) also support certification of the proposed class. <u>First</u>, the absent members of the class have no interest in individually controlling the prosecution of defense of a separate action. Class counsel is not aware of any class member who is presently pursuing an individual claim against SGS. Consequently, there presently are no separate actions to be controlled by members of the class. Should members of the class wish to pursue separate actions, they may do so by opting out of the class. <u>Second</u>, Plaintiff is not aware of any litigation concerning the controversy already begun by or against class members concerning SGS and involving the issues raised in this lawsuit. <u>Third</u>, the United States District Court for the Middle District of Louisiana is a desirable forum for concentrating this litigation. Baton Rouge is a major population center in Louisiana, and also a legal and business center. Vehicles are leased from American Honda in this district and SGS places calls into this district. It is as desirable a forum as any for the litigation of these claims. <u>Fourth</u>, there are no difficulties in the management of this case as a class action. The class, although made up of

_____

employ the class-action device"); and *Lane v. Campus Federal Credit Union*, No, 16-037, 2017 WL 3719976, *6 (M.D. La. May 16, 2017) ("superiority requirement serves…to overcome the problem of small recoveries not providing incentive to sue").

thousands of individuals or entities, are easily identified from SGS's own records, there are no individual issues, the common issues can be resolved on the basis of class-wide proof via summary judgment and/or a trial on the merits, and statutory damages are uniform. Administratively and practically, this case raises no special difficulties as a class action.

### D.    The Classes are Ascertainable Using Objective Criteria.

Ascertainability is an implied requirement in Rule 23 that must also be satisfied for any class to be certified.[99] Satisfaction of this requirement is established upon a showing that it is "administratively feasible for the court to determine whether a particular individual is a member of the proposed class."[100]

The ascertainability requirement is satisfied in this case because the class definitions provide specific and objective criteria for determining class membership:[101]

| Prerecorded Message Class | Cell Phone Class |
|---|---|
| A person to whom SGS made a call using an artificial or prerecorded voice to deliver a message; | A person or entity to whom SGS made a prerecorded message call; |
| Between the dates of October 16, 2013 through May 17, 2017; | Between the dates of October 16, 2013 through May 17, 2017; |
| At a telephone number supplied by AHFC to SGS that was identified as a home number and designated on SGS's records with an 801 or 1201 Status ID code; and | At a telephone number supplied by AHFC to SGS that is designated on SGS's records with an 801, 802, 1201 or 1202 Status ID code; |
|  | The number was for a cellular telephone; and |
| Regarding a vehicle subject to a vehicle lease with AHFC that was signed between the dates of October 1, 2009 and September 13, 2013. | Regarding a vehicle subject to a vehicle lease with AHFC that was signed between the dates of October 1, 2009 and September 13, 2013. |

Further, the data provided to SGS by AHFC, and SGS's own detailed call records, which SGS has confirmed in its sworn deposition testimony are contemporaneously made business

---

[99] *See Frey v. First Nat. Bank S.W.,* 602 Fed. Appx. 164, 168 (5th Cir. 2015), <u>citing</u> *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")
[100] *Sarin v. EKF Diagnostics, Inc.,* No. 16-1816, 2016 WL 7450471, *7 (E.D. La. Dec. 28, 2016).
[101] In addition to the criteria shown in the table below, class members do not include a judge or other personnel employed by the court assigned to this matter, or an officer, director or employee of SGS.

records and the best evidence of the calls, provide accurate, robust and detailed information concerning the recipient of the prerecorded messages. Specifically, SGS's call records identify the lessees' name, the complete address, home and work telephone numbers, lease information, and vehicle identification information, which information was derived directly from AHFC credit applications, which information is inherently reliable.[102] These myriad data points permit cross-referencing that ensures an ascertainable class.[103] Such information provides sufficient cross-checks to ensure wrong numbers calls are excluded from the class, distinguishing this case from others in which class membership was determined solely by reliance on data from third party providers, and is supported in the jurisprudence.[104] More importantly, SGS's own records provide for 65 other call dispositions/codes besides 801/802/1201/1202, to include other dispositions, such as wrong, disconnected or bad number, among many others, all of which are eliminated.[105]

In conjunction with the identification information in SGS's call records, the Prerecorded Message Class can be ascertained from an assessment of the status identification, sub-status identifier, comments, user columns in the SGS call records, and instances of dialer-initiated calls that result in a prerecorded message being left at home (disposition codes 801 and 1201).  SGS's sworn testimony establishes the "left message" disposition codes in its records evidence those instances when a prerecorded message was actually left on the identified phone number. Jurisprudence prohibits a defendant from challenging class certification by questioning the

---

[102] *See* Ex. 7 (Greene Decl.), at ¶¶ 3-4.

[103] *See e.g.* Ex. 5 and 8, excerpts of SGS's call records that show the multiple columns of data for every call.

[104] *See, e.g., Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 522 (E.D. Mich. 2016) ("fax numbers [obtained by defendant] constitute 'objective criteria' the Court can use to determine class membership and such a determination is administratively feasible"), <u>citing</u> *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012); and *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 997 ("fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable").

[105] *See* Ex. 10, at Resp. to Int. No. 28, *e.g.* 1401-Home Phone number no good-Please advise/cancel; Ex. 5, at p. 9, line 894 – call to Jeffrey N. Fayman on Jan. 27, 2016 resulting in disposition of 1501-Work Phone number no good-Please advise/cancel.

accuracy of its own record keeping.[106]   Membership in the class can be further delineated by eliminating calls with Status ID codes (1401, 1501 and 1601) for phone numbers that are "no good"[107] and the comments set forth in SGS's own records that, for example, identify wrong numbers or signify instances when agents spoke with the called individual such that a prerecorded message was not left.

Thus, membership in the Prerecorded Message Class can be ascertained from SGS's own records. The class includes all dialer-initiated calls to numbers identified as home phone numbers for which 801 or 1201 Status ID codes are identified on SGS's own records. Although the AHFC and SGS records alone are sufficient to ascertain membership in the Prerecorded Message Class, analysis by Plaintiff's expert, Anya Verkhovskaya, of the AHFC and SGS data provides additional layers of corroboration, if the Court deems it necessary. Through use of her established methodologies, Ms. Verkhovskaya can provide further verification of class members who received a prerecorded message left at their residential land-line or on a cell phone.[108] Numerous courts have accepted her methodology when certifying TCPA class actions comprised of residential and cellular telephones.[109]

---

[106] *See, e.g., Reyes v. BCA Financial Services, Inc.*, No. 16-24077 (S.D. Fla. June 26, 2018), 2018 WL 3145807, *14 (court disagrees that "limitations in [defendant's] records keeping (i.e., the different meanings of its coding and the lack of historical track records in the coding} prove fatal top class certification" as that is "essentially arguing that the contours of the class should be defined by its own recordkeeping"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions"); *Dr. Robert v. Meinders D.C., Ltd. v. Emery Wilson Corp.*, No. 14-596 (S.D. Ill. June 21, 2016), 2016 WL 3402621, *4 (a defendant may not defeat certification by "rely[ing] on its own failure to obtain and retain records"); and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) (rejecting defense based on inadequacy of records, stating that "would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct").

[107] *See* Ex. 10, Resp. to Int. No. 28.

[108] *See* respectively, Exhibits 12 and 13, Verkhovskaya's Expert Report and Rebuttal Expert Report describing her methodologies, which include the cell phone append and business append. The business append is not necessary for the Cell Phone Class.

[109] *See* Ex. 12, Verkhovskaya Expert Report, on pp. 2-12, attached Ex. B-C.

The Cell Phone Class is comprised of calls to cell phones designated with Status ID codes 801, 802, 1201 and 1202 on SGS's records. Specifically, membership in the Cell Phone Class is comprised of persons whose cell phone number was submitted by AHFC to SGS as *either* a "home" or "work" number and to whom SGS made a prerecorded message call through use of its dialer system.[110] A historical wireless identification process must be conducted to identify those numbers that were wireless at the time the prerecorded message was sent, but a business append is not necessary. The results of the cell phone append, when coupled with and cross-referenced to the myriad data points in SGS's detailed call records setting forth lessee identification information (e.g., name, address, lease and vehicle information) provides for an administratively feasible method to ascertain class membership in this joint/alternative class.

The quality of the data in this case, and the expert methodology applied to same that provides additional verification, is equal to or far exceeds what other courts have found to satisfy the ascertainability requirement.[111]   Moreover, jurisprudence from the Fifth Circuit and elsewhere maintains that a class definition may permissibly include a number of persons who are not damaged because their claims can be eliminated in later stages of the proceeding and their inclusion does not outweigh the efficiencies provided by the class action mechanism.[112] SGS cannot show otherwise.

---

[110] The calls to cell phones are limited to prerecorded messages to expressly identify the type of calls at issue, *not* to activate the *Ybarra* requirement. For the Cell Phone Class, where liability under the TCPA is as a result of SGS's use of an ATDS, the *Ybarra* requirement that the message play is not material.

[111] *See, e.g.,* cases cited in footnote 13 and, in addition, *Brown v. DirecTV, LLC,* 330 F.R.D. 260, 273 (C.D. Cal. 2019) (concluding "identification of Class and Subclass members does not require individualize inquiry" upon submission of call logs with cellphone calls highlighted); *Northrup v. Innovative Health Ins. Partners,* 329 F.R.D. 443, (M.D. Fla. 2019) (finding class was ascertainable as telephone numbers, delivery of the message, and date of the message was "readily determinable" and supplemented with additional contact information produced by defendants); *Moser v. Health Insurance Innovations,* No. 17-1127, 2019 WL 3719889, *12 (S.D. Cal. Aug. 2, 2019) (certified upon "reasonable mechanism to identify class members with reference to call logs and information inputted into [defendant's] website"); and *Hartranft v. TVI, Inc.*, No. 15-1081, 2019 U.S. Dist. LEXIS 68269, *9 (S.D. Cal. April 18, 2019) (finding common questions predominate because whether calls we made without prior consent "can be resolved using the same evidence for the class members, as it is based on Defendants' own records and technology").

[112] *In re Deepwater Horizon,* 739 F.3d 790, at 801 (5th Cir. 2014) (discussing *Mims v. Stewart Title Guaranty Co.,*

## V.    NOTICE

Anya Verkhovskaya is also an expert in class action administration and has opined providing notice in this case is administratively feasible.[113] If the court certifies one or both classes, the Court should issue an order requiring counsel to meet and confer regarding the form and content of the class notice and to submit a notice plan.[114]

## VI.    CONCLUSION

This case is ideal for class certification – the membership of the proposed classes is ascertainable, and the legal theory and defenses are uniform across the classes such that claims are typical and the common issues of law and fact predominate and can be resolved on a class-wide basis. Plaintiff is a responsible and conscientious class representative, class counsel is experienced and capable, and the class action procedure is the superior litigation method. Because all of the legal elements required for a class action are present, this Court should grant Plaintiff's motion and issue orders certifying one or both of the classes, appointing the class representative and class counsel, and order counsel to meet and confer and submit to the court an agreed-upon form of class notice.

Respectfully submitted,

**KEOGH, COX & WILSON, LTD**

BY:    /s/ Christopher K. Jones

---

590 F.3d 298, 302 (5th Cir. 2009) in which it was stated "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct") and at 821 (affirming certification because "[u]nder *Mims, supra* and *In re Rodriguez* [695 F.3d 360, 370 (5th Cir. 2012)], class certification is not precluded simply because a class may include persons who have not been injured"); *Kohen v. Pacific Investment Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (noting it is "almost inevitable" that "a class…will include persons who have not been injured by the defendant's conduct"); and *In re Nexum Antitrust Litigation*, 777 F.3d 9, 21-22 (1st Cir. 2015) (reasoning inclusion of persons in the class definition who are not injured by defendant's conduct is not detrimental to defendants because "[u]ltimately, the defendants will not pay, and the class members will not recover, amounts attributable to uninjured class members" and any inefficiencies in including same "is counterbalanced by the overall efficiency of the class action mechanism").

[113] *See* Ex. 12, Verkhovskaya Expert Report, at attached curriculum vitae (Ex. A) and ¶74.

[114] *See* comparable orders in *Lavigne v. First Community Bancshares, Inc., supra*, 2018 WL 2694457, *24; and *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 180 (S.D. Cal. 2019).

JOHN P. WOLFF, III, Bar #14504
CHRISTOPHER K. JONES, Bar #28101
701 Main Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-3796
Facsimile: (225) 343-9612
Email: jwolff@keoghcox.com
          cjones@keoghcox.com

-and-

BOHRER LAW FIRM, L.L.C.
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Email: phil@bohrerbrady.com
          scott@bohrerbrady.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all known counsel by operation of the court's electronic filing system. I also certify that, as of the date of this mailing, there are no manual recipients identified to receive this mailing.

Baton Rouge, Louisiana, this 6th day of January, 2020.


         /s/ Christopher K. Jones
        CHRISTOPHER K. JONES